_____

No. 96-1785
_____

Rebecca Hoekstra, by and    *
through her parents, John and   *
Sandra Hoekstra,             *
                              *
       Plaintiff-Appellant,   *
                              *   Appeal from the United States
   v.                      *   District Court for the
                              *   District of Minnesota.
Independent School District,   *
No. 283,                *
                              *
       Defendant-Appellee.   *

_____

Submitted: November 20, 1996

Filed: December 23, 1996
_____

Before BEAM, LAY and LOKEN, Circuit Judges.

_____

LAY, Circuit Judge.


Rebecca Hoekstra is a fourteen-year-old Minnesota public school student who suffers from achondroplasia and a central auditory processing disfunction. These physical disabilities qualify her for special education in her school district, Independent School District No. 283 (the District). Rebecca, by and through her parents, John and Sandra Hoekstra (the Hoekstras), filed suit in federal district court against the District asserting (1) the District deliberately deprived Rebecca of a free appropriate public education under the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 et seq. (IDEA), thus violating 42 U.S.C. § 1983, and (2) the District denied Rebecca independent access and use of a lift elevator during part of the 1993-94 school year, in violation of the Americans with

Disabilities Act (ADA).  The district court[1] granted the District's summary judgment motion on both claims, holding the Hoekstras "failed to produce any evidence sufficient to satisfy at least one essential element of either her § 1983 claim or her ADA claim." Hoekstra v. Independent Sch. Dist. No. 283, 916 F. Supp. 941, 949 (D. Minn. 1996).  The Hoekstras appeal.  We affirm.

**BACKGROUND**

In Rebecca's fourth grade year,[2] the Hoekstras disagreed with her educational program.  The parties were unable to resolve their disputes, and in February 1994, the Hoekstras requested a due process hearing to determine whether the District had provided Rebecca with a free appropriate public education as guaranteed by the IDEA.

The hearing was held on ten non-consecutive days in March and April 1994.  The hearing officer (HO) determined Rebecca's educational program was procedurally flawed; nonetheless, it did not rise to the level of a denial of a free appropriate public education under the IDEA.  The Hoekstras appealed the HO's decision to a hearing review officer (HRO), who reversed the HO, finding an IDEA violation.  See In re Indep. Sch. Dist. No. 283, 22 IDELR 47, 55 (Minn. Aug. 1, 1994).  The HRO determined that to cure the violation, the District must, among other things, provide Rebecca with 108 hours of compensatory tutoring.  Neither party appealed the HRO decision.

Rebecca's compensatory tutoring began November 9, 1994.  The

---

[1]The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

[2]In 1992, when Rebecca was in the third grade, the Hoekstras disagreed with the educational services the District provided her. The Hoekstras and the District settled the dispute without a formal administrative hearing.

District claims it began searching for a tutor early in September, but experienced difficulty in finding someone to fill the position. At the end of the academic year, the District had provided 87 of the 108 hours of tutoring to Rebecca. She received an additional 12.5 hours during the summer of 1995, and her parents refused the District's offer to provide the remaining 8.5 hours.

## Section 1983

The Hoekstras' § 1983 claim asserts that the District's delay in providing Rebecca with tutoring constituted a deliberate deprivation of her right to a free appropriate public education under the IDEA. The district court determined the Hoekstras had not met their burden of proving the District acted under any official policy or custom when it delayed her tutoring. The Hoekstras urge us to reverse this determination. It appears to us, however, that the Hoekstras cannot obtain money damages for Rebecca, and it is therefore unnecessary for us to reach the issues underlying the § 1983 claim.

In their Complaint, the Hoekstras claim Rebecca has "suffered educationally from Defendants' actions" and requests that "the Defendants be ordered to pay damages of no less than $50,000.00" Compl. at 4. Since the district court filed its opinion, this court clarified the law on damages available under the IDEA. In Heidemann v. Rother, the plaintiff sought damages in a § 1983 action based on alleged violations of the IDEA. 84 F.3d 1021, 1032-33 (8th Cir. 1996). This court, agreeing with Sixth Circuit precedent, held that "plaintiffs' claims based upon defendants' alleged violations of the IDEA may not be pursued in this § 1983 action because general and punitive damages for the types of injuries alleged by plaintiffs are not available under the IDEA." Id. at 1033; see Crocker v. Tennessee Secondary Sch. Athletic Ass'n, 980 F.2d 382, 386 (6th Cir. 1992) ("[W]e do not find case authority interpreting the [IDEA] to allow an award of general damages for emotional injury or injury to a dignitary interest.").

-3-

Damages are the Hoekstras' only possible avenue to relief in this case.  First, the Hoekstras' Complaint requests only damages.  Second, the facts as presented here preclude the possibility of compensatory services or reimbursement for such services.  The District has provided Rebecca with all but 8.5 hours of tutoring, and has offered to provide the remainder, an offer which the Hoekstras rejected.  Thus, the Hoekstras have refused the only remedy allowed under the IDEA.  Finally, the Hoekstras' attorney conceded at oral argument that Heidemann precluded relief in the form of damages, and admitted she was bringing the claim "on principle."  Under these circumstances, it is clear that we cannot redress the Hoekstras' claim.  The Hoekstras have failed to state a claim under the IDEA, and thus have failed to state a claim under § 1983.  Therefore, though for different reasons, we affirm the district court's dismissal of the Hoekstras' § 1983 claim.

**ADA**

The Hoekstras have also asserted a claim under the ADA. Rebecca's condition makes it painful for her to use the stairs, and so on the advice of her physical therapist, she requested her own key to the elevator at her school.  The elevator is actually a lift, with no top, sides which reach approximately chest height on a child, and an open gate across the front.  Rebecca had access to the lift by informing an adult she needed to use it.  Though the date of her first request for her own key is in dispute, it occurred no later than the first due process hearing, in March 1994.  At that hearing, apparently in response to Rebecca's request, the District claims it was in the process of establishing criteria for safe and independent access to and operation of the lift.  The District developed this criteria in late April 1994, and gave Rebecca her own key on June 3, 1994.  The HRO found the initial denial of a personal lift key to Rebecca was not a violation of her right to a free appropriate public education.

The district court dismissed the Hoekstras' ADA claim because,

-4-

inter alia, it failed to find the District acted in bad faith or exercised gross misjudgment in delaying Rebecca's acquisition of the elevator key.[3]  In Monahan v. State of Nebraska, this court held that "either bad faith or gross misjudgment" must be shown in order to impose liability under § 504 of the Rehabilitation Act. 687 F.2d 1164, 1171 (8th Cir. 1982).  In Heidemann, this court reaffirmed application of the Monahan standard to cases brought under § 504, which is a predecessor to the ADA.  84 F.3d at 1032. The district court in this case, consistent with other district court decisions in this circuit, applied the Monahan standard to the ADA.  Hoekstra, 916 F. Supp. at 948; see Fort Zumwalt Sch. Dist. v. Missouri State Bd. of Educ., 865 F. Supp. 604, 607 & n.3 (E.D. Mo. 1994) (dismissing a § 1983 claim alleging violations of the ADA and § 504 in part because "the parents have failed to allege 'bad faith or gross negligence,' which is required to substantiate a § 504 claim in the context of education," and concluding "the same analysis applies ... under the ADA"); see also Brantley v. Independent Sch. Dist. No. 625, 936 F. Supp. 649, 654 (D. Minn. 1996) (agreeing with the district court opinion in Hoekstra and applying the Monahan standard to the ADA).

The Hoekstras urge that the ADA is meant to provide greater protection for disabled individuals than is available under § 504, and therefore the ADA must be interpreted more broadly.  This court has held that enforcement remedies, procedures and rights under Title II of the ADA are the same as under § 504, and has consistently applied § 504 case law to ADA cases.  Allison v.

---

[3]The district court also held that (1) the Hoekstras were required to, and did not, exhaust their ADA claims under the IDEA before bringing the ADA claim in federal court; and (2) notwithstanding the bad faith requirement, the Hoekstras failed to produce evidence of pretext to rebut the District's claim that it delayed giving Rebecca an elevator key for safety reasons.  Because we determine that an ADA claim in this context requires a showing of bad faith or gross misjudgment, and none was shown here, we decline to reach these additional issues.

Department of Corrections, 94 F.3d 494, 497 (8th Cir. 1996); Pottgen v. Missouri State High Sch. Activities Ass'n, 40 F.3d 926, 930 (8th Cir. 1994).  In applying a bad faith/gross misjudgment standard to § 504, the Monahan court reasoned that such a standard harmonizes the Education for All Handicapped Children Act of 1975 (a predecessor to the EHA and the IDEA) and § 504 by balancing "the rights of handicapped children, the responsibilities of state educational officials, and the competence of courts to make judgments in technical fields."  687 F.2d at 1171.  The Monahan court gave deference to experts dealing with the special needs of disabled children, reasoning that § 504 was not intended to create general tort liability for educational malpractice.  This deference, and the reasoning behind it, is as appropriate under the ADA as it is under § 504.  Therefore, we hold that in the context of educational services for disabled children, a showing of gross misjudgment or bad faith on the part of school officials is necessary to succeed on an ADA claim.  The Hoekstras have not made such a showing, and therefore their ADA claim must fail.

JUDGMENT AFFIRMED.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.