United States Court of Appeals
**FOR THE EIGHTH CIRCUIT**
No. 96-4280EM

Allen DeBord, Individually and as next   *
friend for Kelly DeBord; Debra DeBord, *
Individually and as next friend for Kelly   *
DeBord,                                       *

                     *

          Appellants,        *     Appeal from the United States
                                      *     District Court for the Eastern
   v.                           *     District of Missouri.
                                        *

Board of Education of the Ferguson-   *
Florissant School District; Shirley      *
Salmon; Joyce Dreimeier; Cindy       *
Ormsby,                                  *

                     *

          Appellees.        *

_____

Submitted: September 11, 1997
Filed: October 9, 1997

_____

Before FAGG, WOLLMAN, and LOKEN, Circuit Judges.

_____

FAGG, Circuit Judge.

In this student disability discrimination case, parents Allen and Debra DeBord appeal the district court's grant of summary judgment to the Board of Education of the Ferguson-Florissant School District and three individual defendants (collectively the school district). We affirm.

The DeBords' eight-year-old daughter, Kelly, has attention deficit hyperactivity disorder (ADHD). To treat her condition, Kelly's doctor prescribed one hundred milligrams of sustained release Ritalin when Kelly arises in the morning, and forty milligrams of the drug at 3:00 in the afternoon while Kelly is still at school. The school district provides health services to students, including administration of prescription drugs during school hours, but the school district has a written policy against administering prescription drugs in an amount exceeding the recommended daily dosage listed in the Physicians' Desk Reference (PDR). Joyce Dreimeier, the nurse at Kelly's elementary school, refused to give Kelly her afternoon dose because Kelly's daily intake of Ritalin exceeds the sixty milligram daily recommendation listed in the PDR. The DeBords appealed to the Board of Education, providing a letter from Kelly's doctor confirming her prescription, some medical information about high dose use of Ritalin, and an offer to sign a waiver of liability. The school board declined to direct administration of Kelly's prescription by the school, even though Kelly's higher dosage is necessary to treat her effectively, Kelly suffers no side effects, and no studies show whether higher dosages are harmful. Instead, the school board offered several alternatives, including alteration of Kelly's class schedule to permit early dismissal and home administration of both of Kelly's doses, or administration of Kelly's afternoon dose at school by one of her parents or someone designated by them.

Unhappy with the school district's stance, the DeBords brought this action alleging the school district's refusal violates section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (1994); Title II of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12131-12165 (1994); and 42 U.S.C. § 1983 (1994). The district court granted summary judgment to the school district. The district court concluded the school district's refusal was not based on Kelly's disability, but on the district's policy stemming from concerns about potential harm to students and liability. The district court also concluded the school district reasonably accommodated the DeBords.

We review the grant of summary judgment de novo. See Smith v. City of Des Moines, 99 F.3d 1466, 1468 (8th Cir. 1996). We affirm if the record, viewed in the light most favorable to the DeBords, shows there is no genuine issue of material fact and the school district is entitled to judgment as a matter of law. See id. at 1469. Before we turn to the DeBords' contentions, we examine the discrimination law that guides us.

Both the Rehabilitation Act and the ADA prohibit discrimination on the basis of disability. The Rehabilitation Act provides: "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a) (1994). Under regulations implementing the Rehabilitation Act, a recipient of federal funds "that operates a public elementary or secondary education program shall provide a free appropriate public education to each qualified handicapped person," 34 C.F.R. § 104.33(a) (1996), including "the provision of regular or special education and related aids and services," id. § 104.33(b)(1). A recipient must give disabled students an equal opportunity to participate in nonacademic and extracurricular services, including health services. See id. § 104.37(a). The Rehabilitation Act requires a recipient of federal funds to provide "an otherwise qualified handicapped individual . . . with meaningful access to the benefit that the grantee offers." Alexander v. Choate, 469 U.S. 287, 301 (1985). To assure meaningful access, the grantee may have to make reasonable accommodations in its program or benefit. See id. & n.21; Alexander v. Pathfinder, Inc., 91 F.3d 59, 62 (8th Cir. 1996); Lloyd v. Housing Auth., 58 F.3d 398, 399 (8th Cir. 1995).

After the Rehabilitation Act had been law for several years, Congress enacted the ADA. Title II of the ADA, applicable to public entities including public schools, states that "no qualified individual with a disability shall, by reason of such disability, . . . be denied the benefits of the services, programs, or activities of a public entity, or

be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (1994). Title II regulations require a public entity to "make reasonable modifications in policies . . . when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service." 28 C.F.R. § 35.130(b)(7) (1996). Congress intended Title II and its implementing regulations to be consistent with the Rehabilitation Act and its regulations. See Pottgen v. Missouri St. High Sch. Activities Ass'n, 40 F.3d 926, 930 (8th Cir. 1994); McPherson v. Michigan High Sch. Athletic Ass'n, Inc., 119 F.3d 453, 459-60 (6th Cir. 1997) (en banc); Urban v. Jefferson County Sch. Dist. R-1, 89 F.3d 720, 727-28 (10th Cir. 1996). To succeed on their claims under either Act, the DeBords must show the school district refused to administer Kelly's medication because of her disability. See Davis v. Francis Howell Sch. Dist., 104 F.3d 204, 206 (8th Cir. 1997); McPherson, 119 F.3d at 460.

The DeBords argue the school district's refusal to provide the nonacademic service of drug administration denies Kelly a free appropriate education because without her full dosage of Ritalin, she cannot benefit from the school's educational program. See 34 C.F.R. §§ 104.33(a), .33(b)(1) (1996). The administrative agency charged with enforcing the Rehabilitation Act in school districts has held that when a "handicapped student[] requires the administration of medication in order to benefit from his or her educational program, the [school district] is obligated to ensure that the medication is administered." Berlin Brothersvalley (PA) Sch. Dist., OCR Region III, 353:124 (Dec. 23, 1988). The agency concluded the Berlin district's policy granting school officials unspecified discretion to decline administration of medication and requiring the student's parents to release the district from liability violated 34 C.F.R. §§ 104.33(a) and (b)(1). The DeBords rely heavily on this agency interpretation, and say we must give it substantial deference. See Blum v. Bacon, 457 U.S. 132, 141 (1982).

Unlike the drug administration policy in <u>Berlin</u>, the policy here contains an objective standard limiting administration of prescription medication only when the prescription exceeds the maximum dosage recommended in the PDR. There is no evidence that the school district had disabilities in mind when formulating or implementing its policy. The DeBords do not question the truthfulness of the school district's expressed motivations of fear of student harm and potential liability. Instead, the DeBords say the fears are invalid. Whether or not ill-founded, however, the school district's fears are unrelated to disabilities or misperceptions about them. The policy is neutral; it applies to all students regardless of disability. A student's excess prescription, not the student's disability, prevents the student from receiving medication from the school nurse. <u>See</u> <u>McPherson</u>, 119 F.3d at 460-61. Although Kelly requires Ritalin to treat her disability, it is undisputed that the reason for Kelly's high dosage is probably her metabolism, not the severity of her disability. Kelly's own doctor and others stated the amount of Ritalin needed to treat ADHD is unrelated to the severity of the disorder in any particular patient. Thus, the policy does not discriminate against the severely disabled, as the DeBords assert.

The DeBords argue Kelly was treated differently than other students, but students who received their medication at school did not have prescriptions exceeding the PDR's recommended daily dosage. It is undisputed that the school district did not knowingly administer prescription drugs to any student, disabled or not, in excess of the PDR's recommendation. Disparate treatment is not the only way to prove unlawful discrimination, but the record here offers no other basis to infer the school board's actions were based on Kelly's disability. <u>See</u> <u>Miners v. Cargill Communications, Inc.</u>, 113 F.3d 820, 824 n.7 (8th Cir. 1997). The DeBords have not tried to show the policy has the effect of discriminating against the disabled or the severely disabled. On the record here, the school board's facially neutral policy does not distinguish between those who will receive their full prescription dose and those who will not on the basis of any trait that the disabled or severely disabled are less or more likely to possess. <u>See</u> <u>Choate</u>, 469 U.S. at 302 (rejecting Rehabilitation Act claim that state's fourteen-day

limit on Medicaid services had disparate impact on the disabled). In other words, the DeBords have not shown disabled students are more likely than nondisabled students to require prescription dosages exceeding the PDR's recommendation. Although Congress was concerned about the discriminatory effects of "overprotective rules and policies" on the disabled, 42 U.S.C. § 12101(a)(5), nothing here suggests the policy or its application has the purpose or effect of discriminating against disabled students.

The DeBords also rely on 42 U.S.C. § 12182(b)(2)(A)(ii), a Title III statute defining discrimination to include the failure to make reasonable modifications in policies. The DeBords assert the school district's failure to waive its policy for Kelly violates this statute. Title III of the ADA applies to private entities providing public accommodations, however, not to public entities. See 42 U.S.C. §§ 12181-82; Sandison, 64 F.3d at 1036. Entities subject to Title III include private schools, but not public ones. See 42 U.S.C. § 12181(7); 28 C.F.R. § 36.104. It is unclear whether § 12182(b)(2)(A)(ii) from Title III applies in a Title II case. See 1 Henry H. Perritt, Jr., Americans with Disabilities Act Handbook § 5.3, at 201-02 & n.21 (3d ed. 1997) (preamble to ADA regulations says Title II intends to incorporate only those provisions of Titles I and III that are consistent with Rehabilitation Act regulations); Innovative Health Sys., Inc. v. City of White Plains, 117 F.3d 37, 47 (2d Cir. 1997) (Heaney, J., sitting by designation) (ADA's legislative history states Title II's prohibitions are to be identical to prohibitions of Titles I and III; no intent to excuse similar discriminatory conduct by public entities). Title II does not define discrimination as including the failure to make reasonable modifications, but a Title II regulation states a public entity must make reasonable modifications in policies when necessary to avoid discrimination. See 28 C.F.R. § 35.130(b)(7) (1996); see also Weinreich v. Los Angeles County, 114 F.3d 976, 978-79 (9th Cir. 1997) (absent discrimination on basis of disability, no duty under this regulation to make reasonable modifications). On the other hand, public entities discriminate in violation of the Rehabilitation Act if they do not make reasonable accommodations to ensure meaningful access to their programs. See Choate, 469 U.S. at 301.

We need not resolve whether 42 U.S.C. § 12182(b)(2)(A)(ii) applies in a Title II case, or whether a reasonable modification or accommodation requirement applies absent a separate showing of discrimination. Even if either or both apply, we believe the school board's proposals to establish workable schedules so Kelly's family can give her the prescribed dosages of Ritalin satisfy these requirements, and anyway, the waiver requested by the DeBords is not a reasonable modification or accommodation. There is no precise reasonableness test, but an accommodation is unreasonable if it either imposes undue financial or administrative burdens, or requires a fundamental alteration in the nature of the program. See Pottgen, 40 F.3d at 930; Staron v. McDonald's Corp., 51 F.3d 353, 356 (2d Cir. 1995). Although the school district has not made the assertion, adjudication of waiver requests would impose an undue administrative burden on the school district to verify the safety of an excess dosage in each individual case. See Pottgen, 40 F.3d at 931. At this time, no one knows what the long term effects of high doses of Ritalin might be. A waiver of liability might not be effective, and statutory immunity might not apply. These concerns may be speculative, but they are not unreasonable. Significantly, the school district is not preventing Kelly from receiving the medicine she needs for learning. The school district offered to alter Kelly's class schedule to permit home administration of Kelly's medicine, or to allow Kelly's parents or their designee to administer her medicine at school. Kelly's parents are able to give Kelly her schooltime dose. Like the district court, we conclude the school district reasonably accommodated Kelly's ADHD as a matter of law.

Because the school district did not discriminate against Kelly on the basis of her disability as a matter of law, the district court properly granted summary judgment to the school district on the DeBords' Rehabilitation Act and ADA claims. The failure to show a violation of the Rehabilitation Act or the ADA dooms the DeBords' § 1983 claims based on those federal laws. See Hoekstra v. Independent Sch. Dist. No. 283, 103 F.3d 624, 626 (8th Cir. 1996), cert. denied, 117 S. Ct. 1852 (1997); Pottgen, 40 F.3d at 931. The DeBords' § 1983 claim based on a violation of the Fourteenth

Amendment's Equal Protection Clause also fails. The DeBords did not show the school district treated Kelly differently from other children with prescriptions exceeding the PDR's recommended dosage, and the school district's refusal to administer the excess dose is rationally related to the legitimate state interest of protecting students' health. See Klinger v. Department of Corrections, 31 F.3d 727, 731 (8th Cir. 1994).

We affirm the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.