# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-3590

_____

| | | |
|---|---|---|
| Brenda Deann Birmingham, | * | |
| | * | |
| Plaintiff - Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Arkansas. |
| Omaha School District; David Land, | * | |
| Superintendent of the Omaha School | * | |
| District; Randy J. Centers, Principal | * | |
| of the Omaha School District; Larry | * | |
| Gilbert, as a Current or Former | * | |
| Member of the Omaha School Board; | * | |
| Larry Matlock, as a Current or Former | * | |
| Member of the Omaha School Board; | * | |
| Lanny, Fuefett, as a current or former | * | |
| member of the Omaha School Board; | * | |
| Pam Gass, as a Current or Former | * | |
| Member of the Omaha School Board; | * | |
| David Arnold, as a Current or Former | * | |
| Member of the Omaha School Board; | * | |
| Bill Curtis; Mike Fulton, as a Current | * | |
| or Former Member of the Omaha | * | |
| School Board; James Strain, Omaha | * | |
| High School Special Education | * | |
| Teacher; Bill Gregg, | * | |
| | * | |
| Defendants - Appellees, | * | |
| | * | |
| Boone County Independent Living | * | |
| Center, Inc. | * | |
| | * | |

                Defendant                        *
Lee Fraiser, Director, Arkansas                  *
Department of Human Services;                    *
Sue Habermehl,                                   *
                                                 *
            Defendants - Appellees,              *
                                                 *

- - - - - - - - - - - - - - - -

United States of America,                        *
                                                 *
      Amicus on Behalf of Appellant.             *
                                    _____

                        Submitted:  May 10, 2000

                        Filed:  August 7, 2000
                                    _____

Before RICHARD S. ARNOLD and HEANEY, Circuit Judges, and SIPPEL[1], District
      Judge.
                                    _____

HEANEY, Circuit Judge.

      Brenda Birmingham, through her mother Rose, ("Birmingham") appeals the district court's dismissal of her claims brought under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400-1415 (2000); § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (2000); Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132 (2000); and 42 U.S.C. § 1983 (2000). We affirm in part and reverse in part.

---

[1]The Honorable Rodney W. Sippel, United States District Judge, for the Eastern District of Missouri, sitting by designation.

## FACTS

Brenda Birmingham is mentally handicapped and suffers from cerebral palsy. Prior to May 25, 1995, she attended school in the Omaha School District. In April 1995, at the age of eighteen, Brenda complained to school officials that her mother, Rose, was abusing her. They reported the matter to the Arkansas Department of Human Services (ADHS), and Brenda was placed in ADHS protective custody.

Brenda wanted to remain in protective custody, and on May 15, 1995, the Boone County Probate Court held a hearing to determine whether Brenda was competent to choose where to reside. The Probate Court concluded that she was, and Brenda remained in protective custody until July 4, 1995, when she returned home to live with Rose.

Meanwhile, school officials scheduled an Individual Education Program (IEP) meeting for May 10, 1995 to consider Brenda's educational plan for the upcoming year. Rose was not notified in writing of the meeting, but upon learning of it, requested to attend. The school denied her request on the grounds that Brenda was eighteen years-old, was in protective custody, and did not want Rose present.

Soon thereafter, school officials consulted Brenda's ADHS social worker and determined that it was in Brenda's best interest to graduate with the current class so that she could focus on learning independent living skills in a community independent living program. School officials asked Brenda if she wanted to graduate early. She responded affirmatively, and was graduated on May 25, 1995. Rose was not given prior written notice of the school's decision to graduate Brenda.

Rose filed a complaint regarding Brenda's graduation with the Arkansas Department of Education (ADOE). ADOE investigated and issued a report on November 15, 1995, denying Rose's complaint on the basis that the school district had

3

not rushed to graduate Brenda. Rose appealed to the United States Department of Education on February 28, 1997.

On April 27, 1998, Birmingham sued the Omaha School District, the District's Superintendent, a principal, a teacher, current and former members of the Omaha School Board, the former ADHS Director, and an ADHS employee. Birmingham alleged that by graduating Brenda early without prior written notice to Rose, the defendants violated the IDEA, § 504 of the Rehabilitation Act, Title II of the ADA, and § 1983. Birmingham sought damages, attorneys' fees and "any further relief that the court deems just and proper." (Compl. at 9.)

The district court decided the case in two separate opinions, both based on the written stipulations of the parties. In the first, the district court dismissed Birmingham's IDEA claim as time-barred. In the second, it dismissed her § 1983 claim for failure to state a claim, and her ADA and § 504 claims for failure to prove that the defendants acted in bad faith or with gross misjudgment.

## DISCUSSION

### I. IDEA Violation

As stated above, the district court decided this case on stipulated facts. It is clear from those facts that the IDEA was violated. The IDEA requires that school districts educate disabled students to twenty-one years of age, unless doing so is inconsistent with state law. See 20 U.S.C. § 1412(a)(1)(B)(i). Arkansas law mandates that school districts educate persons either to the age of twenty-one or until they complete the secondary education program. See Ark. Code Ann. § 6-18-202(b)(1) (LEXIS 1999). Thus, under the IDEA, a disabled student in Arkansas must be educated to the age of twenty-one or until he/she completes the state's secondary education program.

4

The IDEA provides, however, that a disabled student may graduate before one of these requirements is met if procedural safeguards are followed. See generally 20 U.S.C. § 1415(b). Foremost among these are prior written notice to the parent whenever school officials propose a change in the "educational placement of the child," id. at § 1415 (b)(3), and the opportunity for the parent to "present complaints" regarding the proposed change, id. at § 1415(b)(6).

Neither party disputes that Brenda Birmingham is disabled as defined by the IDEA, nor that her graduation constituted a change in placement. Nonetheless, at the time of her graduation, Brenda was eighteen and had not completed Arkansas's secondary education program, nor had Rose been given prior written notice of the graduation decision or an opportunity challenge it.

The school district contends that notice to Rose was not required . It cites 20 U.S.C. § 1415(m), which provides that parental rights may be transferred to the disabled student upon the student's eighteenth birthday unless the student is adjudicated incompetent. The district argues that because Brenda was eighteen and adjudicated competent by the Probate Court, Rose no longer had parental rights, and written notice to her was unnecessary. This argument is unpersuasive.

Section 1415(m) was not amended to the IDEA until 1997. However, Brenda was graduated on May 25, 1995. Thus, at the time the school district proposed graduating Brenda, the IDEA did not provide for the transfer of parental rights to the disabled child. Rose then retained her parental rights under the IDEA, and written notice to her was required. Failure to provide such notice violated the IDEA.

## II.    Statute of Limitations

The question remains whether the district court erred by dismissing Birmingham's claim as time-barred. The IDEA does not contain a statute of

limitations. When a federal law has no statute of limitations, courts may borrow the most closely analogous state statute of limitations, unless doing so would frustrate the policy embodied in the federal law. See Aaron v. Brown Group, Inc., 80 F.3d 1220, 1223 (8th Cir. 1996).

The district court in this case borrowed the thirty-day limitations period of the Arkansas Administrative Procedure Act (AAPA), Ark. Code Ann. § 25-15-212(b)(1) (Michie 1987). The district court considered the AAPA and IDEA analogous because both permit challenges to administrative decisions. The district court also concluded that the thirty-day limitations period comported with IDEA policies because notice of educational decisions is required; parents need only decide during the limitations period whether to sue; and parents are encouraged to act promptly. We review de novo the district court's decision to borrow a particular state statute of limitations. See Vrban v. Deere & Co., 129 F.3d 1008, 1009 (8th Cir. 1997).

Contrary to the district court's conclusion, the AAPA is not closely analogous to the IDEA. Rather, the two statutes differ significantly. Under the AAPA, a person aggrieved by a state agency decision may seek judicial review of the decision within thirty days. See Ark. Code Ann. § 25-15-212(b)(1). The reviewing state court considers the agency's action and either affirms, reverses or modifies the decision. See id. at § 25-15-212(h). The IDEA, on the other hand, requires a parent, dissatisfied with an educational decision regarding his/her child, to exhaust state administrative remedies before proceeding to federal court.[2] See 20 U.S.C. § 1415(i)(2). Once state remedies are exhausted, the federal court reviews the issues de novo and renders a judgment on the merits. See id. It does not merely affirm, reverse, or modify the agency decision.

_____

[2] We note that a plaintiff may bring an IDEA claim directly to federal court when exhaustion would be futile. See Honig v. Doe, 484 U.S. 305, 326-27 (1988).

6

Moreover, the scope of review is narrower under the AAPA than the IDEA. A state court reviewing an AAPA decision can reverse only if the agency's decision violated the law, exceeded statutory authority, was made using an unlawful procedure, was not supported by substantial evidence, or was "[a]rbitrary, capricious, or characterized by abuse of discretion." Ark. Code Ann. § 25-12-212(h)(1)-(5). Under the IDEA, the district court "make[s] an independent decision of the issues based on a preponderance of the evidence. . . ." Fort Zumwalt Sch. Dist. v. Clynes, 119 F.3d 607, 610 (8th Cir. 1997).

The evidence also differs under the two statutes. AAPA judicial review is limited solely to the administrative record. See Ark. Code. Ann. § 25-15-212(g). The reviewing court cannot hear testimony, receive additional evidence or hold an evidentiary hearing. Contrarily, in an IDEA case, the record is but one piece of evidence the district court considers. See 20 U.S.C. § 1415(h).

Because the standard of review, scope of review and evidence considered differ significantly under the IDEA and AAPA, the statutes are not closely analogous. Even if they were, however, the district court erred by borrowing the AAPA's thirty-day statute of limitations because it violates IDEA policies.

The IDEA mandates that all disabled children have the opportunity to receive a free appropriate public education, and that the child's rights and those of his/her parents are protected. See 20 U.S.C. § 1400(d)(1)(B). The IDEA also encourages parents and school officials to resolve disputes over the disabled child's education, so that the child is not needlessly deprived of the education mandated by law. See Murphy v. Timberlane Reg'l Sch. Dist., 22 F.3d 1186, 1193-94 (1st Cir. 1994).

Both of these policies are violated by a thirty-day statute of limitations. Thirty days does not allow parents sufficient time to work with school officials to resolve educational disputes. Useful discourse that may resolve such disputes is foreclosed

7

because parents are forced to immediately litigate. The period also does not consider the scope of review in an IDEA case. Although thirty days may be long enough for an AAPA action, where review is limited to the record, it is insufficient for an IDEA claim because review is de novo and may expand beyond the record.

On a practical note, the truncated limitations period does not take into account the realities of raising a disabled child. Disabled children can require considerable parental attention, which leaves parents limited time to prepare a lawsuit. Borrowing a thirty-day limitations period would prevent many parents from bringing valid IDEA claims, simply because of their child's disability -- an effect abhorrent to the IDEA.

Because the district court erred by applying the AAPA's thirty-day statute of limitations, we turn now to the appropriate limitations period. Our court recently considered this question for IDEA cases arising out of Missouri. See Strawn v. Missouri Bd. of Educ., 210 F.3d 954 (8th Cir. 2000). In Strawn, we concluded that a civil rights action is the most closely analogous state cause of action to an IDEA claim. See id. at 957. In Missouri, civil rights claims are brought under the Missouri Human Rights Act (MHRA), Mo. Ann. Stat. §§ 213.010 - 213.137 (West Supp. 2000), which carries a two-year limitations period. We determined that two years was not "such a brief period that it undermines the IDEA policy of providing parents the opportunity to protect their disabled children's rights," nor did it vitiate the IDEA policy of providing for the quick resolution of claims. See id. at 958.

Arkansas recognizes statutory causes of action for civil rights violations. See Ark. Code Ann. §§ 16-123-101 to 108 (LEXIS Supp. 1999); Ark. Code. Ann. §§ 16-123-201 to 210. However, unlike Missouri, Arkansas has not codified a general statute of limitations specifically for civil rights actions.[3] Accordingly, we may look to

---

[3]The Arkansas Civil Rights Act, however, contains a limitations period for employment-discrimination claims only. See Ark. Code Ann. § 16-23-107(c).

principles developed in federal civil rights actions brought under § 1983, a statutory provision also without a limitations period. See Murphy, 22 F.3d at 1193; see also Ark. Code. Ann. § 16-123-105(c) (directing courts to consider § 1983 when analyzing civil rights offenses). For § 1983 claims, the Supreme Court has expressed a preference for borrowing the state statute of limitations governing personal-injury actions because "[i]t is most unlikely that the period of limitations applicable to [personal injury] claims ever was, or ever would be, fixed in a way that would discriminate against federal claims, or be inconsistent with federal law in any respect." Wilson v. Garcia, 471 U.S. 261, 279 (1985).

Accordingly, we have held that the three-year limitations period contained in Arkansas's general personal-injury statute applies to § 1983 actions. See Ketchum v. City of West Memphis, 974 F.2d 81, 82 (8th Cir. 1992). Based on our court's reasoning in Strawn and the Supreme Court's opinion in White, we conclude that Arkansas's general personal-injury statute is most analogous to the IDEA.

In addition, its three-year limitations period does not does not violate IDEA policies. A three-year statute of limitations encourages parents to work with school officials to resolve disputes over the disabled child's education. It also allows parents time to prepare a federal lawsuit, and accounts for the time constraints faced by parents of disabled children.

We also note that borrowing Arkansas's three-year statute of limitations for both IDEA and § 1983 claims yields a result consistent with our decision in Digre v. Roseville Sch. Indep. Dist. No. 623, 841 F.2d 245 (8th Cir. 1988). In Digre, we held that IDEA claims can be brought under both the IDEA and § 1983. See id. at 250. Thus borrowing the three-year limitations period for both IDEA and § 1983 claims ensures that identical claims remain viable for an identical period.

9

Although the accrual date for Birmingham's cause of action is disputed, we need not decide this issue. The decision to graduate Brenda was made in May 1995, and her complaint was filed on April 28, 1998, less than three years later. Regardless of the actual date, Birmingham's cause of action began to accrue within this period. Thus, her claim is timely.

## III.    Appropriate Relief

Birmingham next appeals the district court's dismissal of her § 1983 claim, which also alleged IDEA violations. The district court dismissed the claim on the ground that Birmingham only sought damages, not permitted by the IDEA.

Under the IDEA, the court "shall grant such relief as the court determines is appropriate." See 20 U.S.C. § 1415(i)(2)(B)(iii). "Such relief" includes compensatory education services, see Meiner v. Missouri, 800 F.2d 749, 754 (8th Cir. 1986), but excludes general and punitive damages, see Heidemann v. Rother, 84 F.3d 1021, 1033 (8th Cir. 1996); Hoekstra v. Independent Sch. Dist. No. 283, 103 F.3d 624, 625-26 (8th Cir. 1996).

Birmingham's complaint seeks damages, reasonable attorneys' fees and costs, and "any further relief that the court deems just and proper." (Compl. at 9.) Because the district court may order compensatory education if it deems such a remedy just and proper, the district court erred by dismissing her § 1983 claim.

## VI.    ADA and § 504 Claims

Birmingham finally appeals the district court's dismissal of her ADA and § 504 claims. Title II of the ADA "prohibits qualified individuals with disabilities from being excluded from participation in or the benefits of the services, programs, or activities of a public entity." Randolph v. Rogers, 170 F.3d 850, 857 (8th Cir. 1999). Similarly,

10

§ 504 of the Rehabilitation Act mandates that "[n]o otherwise qualified individual with a disability . . . shall . . . be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a) (2000). We have held that the enforcement, remedies, and rights are the same under both Title II of the ADA and § 504 of the Rehabilitation Act. See Hoekstra, 103 F.3d at 626.

Where alleged ADA and § 504 violations are based on educational services for disabled children, the plaintiff must prove that school officials acted in bad faith or with gross misjudgment. See id. at 627. Birmingham does not contend that defendants acted in bad faith. Rather, she claims they acted with gross misjudgment by graduating Brenda early, without prior written notice to Rose. We cannot agree.

Both the school district and ADHS defendants acted in response to Brenda's allegations of abuse by Rose. Upon learning of the allegations, school officials concluded that it was in Brenda's best interest to graduate with the current class, so that she could focus on developing independent living skills. Before reaching this conclusion, however, they considered the Probate Court's competency determination, and consulted Brenda's ADHS social worker, who also agreed that Brenda's best option was to graduate. Finally, school officials discussed the option with Brenda, who told them that she wanted to graduate early.

The evidence shows that the defendants' decision to graduate Brenda early was made in response to her abuse allegations and with the intent of doing what was in her best interest. For these reasons, the district court correctly concluded that the defendant did not act in bad faith or with gross misjudgment.

## CONCLUSION

11

The district court erred by dismissing Birmingham's IDEA and § 1983 claims. Because the IDEA was violated, however, we remand only to determine the nature and extent of the compensatory education to which Brenda is entitled. We affirm the district court's decision to dismiss her ADA and § 504 claims.

A true copy.

Attest.

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.