**Jane DOE, Individually and as Guardian Ad Litem for Judy Doe, a Minor Child, Plaintiffs,**

v.

**LENNOX SCHOOL DISTRICT NO. 41–4, Albert Van Overmeer, Individually and in his capacity as Superintendent of Lennox School District No. 41–4, and Roger Degroot, Individually and in his capacity as Principal of Tea Elementary School, Defendants.**

No. CIV. 02–4220.

United States District Court,
D. South Dakota,
Southern Division.

Dec. 18, 2003.

Richard D. Casey, Lynn, Jackson, Shultz & Lebrun, P.C., Sioux Falls, SD, for Plaintiff.

Michael L. Luce, Susan Brunick Simons, Dana Van Beek Palmer, Davenport, Evans, Hurwitz & Smith, Sioux Falls, SD, for Defendant.

## MEMORANDUM OPINION AND ORDER

PIERSOL, Chief Judge.

Pending before the Court is Defendants Lennox School District No. 41–4, Albert Van Overmeer, and Roger DeGroot's Motion for Summary Judgment, Doc. 35.

This Court has earlier dismissed Count II of Plaintiffs' Amended Complaint, which alleged a violation of the South Dakota Human Rights Act, and Count IV of Plaintiffs' Amended Complaint, which alleged a § 1983 claim. Defendants are moving for summary judgment on the causes of action alleging violations of Title IX of the Educational Amendment of 1977, and violations of Section 504 of the Rehabilitation Act and Title II of the Americans with Disabilities Act. Defendants are also seeking summary judgment against Plaintiffs on the state claims for intentional infliction of emotional distress and negligence. This Court heard oral argument on the summary judgment motion on October 20, 2003, and is now granting the motion for summary judgment with regard to the claims over which this Court has original jurisdiction, and dismissing without prejudice the claims based on state law.

## FACTUAL BACKGROUND

The minor Plaintiff, Judy Doe, was a first grade student at Tea Elementary School during the 2000/2001 school year. The Tea Elementary School is part of the Lennox School District. Some time before March 20, 2001, after leaving the restroom at school, Judy was kissed on the lips by a first grade male student, John Smith. Judy advised her teacher, who telephoned both children's parents and advised them of the incident. Judy's teacher also contacted the principal, Dr. DeGroot, who met with the teacher and John Smith the next morning. As a result of the kissing incident, John Smith lost his recess and received a verbal reprimand. After the kissing incident, the teacher also advised Judy's mother, Jane Doe, that Judy and John Smith would not be permitted to go to the bathroom at the same time.

On the evening of the kissing incident, Judy advised Jane Doe that John Smith had told Judy not to tell about the kissing incident. Judy described to her mother the manner in which she had been kissed. Jane Doe characterized the description as involving a kiss that was more "seductive" than Jane Doe would have expected. Jane Doe contacted the teacher the next day and described the "seductive" nature of the kiss. Jane Doe testified that the teacher told her she was not surprised. Jane Doe had been a volunteer in Judy's classroom. Although Jane Doe contends that the teacher told her that John Smith had demonstrated sexually inappropriate actions and was to be put on Ritalin, Jane Doe has not clarified whether this statement was made before or after the kissing incident. The teacher testified that John Smith had a number of behavioral problems, which did not include any sexual acting out.

On March 20, 2001, the teacher left the class in the school's lunch room and went to the teachers' lounge to have lunch at 11:15 a.m. At that time at the Tea Elementary School, supervisors were present in the lunchroom, the hallway, and outside on the play ground. After the children ate their lunch, they were supposed to walk down a hallway to their lockers, put on their coats and boots, and go outside the building to the playground. An aide was placed in the hallway to watch the children as they left the lunchroom and walked through the hallway to make sure the students did not run, push and shove, and that they got outside to the playground. Although the first grade students kept their coats and boots in lockers in the hallway outside the classroom, the teacher had them put their shoes on their desks before going to the locker to get their boots.

On March 20, 2001, apparently while being in the classroom to put their shoes on their desks, Judy Doe and John Smith

were left unsupervised during the lunch break prior to going out on the playground. Later that day Judy told her teacher that John Smith exposed his bottom and his penis to her. The teacher, the school counselor, and the principal, Dr. DeGroot, then spoke with John Smith who eventually admitted that what Judy had reported was true. The teacher contacted Jane Doe that afternoon and advised her that John Smith had exposed himself to her daughter. Later that evening Judy tod her mother that during the lunch break, John Smith had also touched her outside her clothing on her butt. The next evening Judy told her mother that during the March 20 lunch break. John Smith promised her five "Fruit by the Foot" candy if she would pull down her pants. Judy said that she pulled down her pants and John Smith touched her near her rectum with his finger.

After John Smith admitted exposing himself to Judy Doe, Dr. DeGroot contacted and met with John Smith's parents. John Smith was then suspended from school for ten days, and was not allowed to return to school until his parents submitted a written statement from a psychologist asserting that John Smith was not a danger to other children. The school officials also contacted law enforcement and the Department of Social Services regarding the incident. John Smith was put in another first grade classroom upon his return to school, and the school employees were advised that Judy and John Smith were not supposed to have any contact in the school and on the playground. Other safety measures such as locking doors were put into place. The day after the incident, the teacher and principal met with Jane Doe and the man she lives with to discuss what action was being taken regarding the March 20 incident. The school also offered to provide counseling to

Judy to assist her in coping with the incident.

## DISCUSSION

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). In ruling on a motion for summary judgment, the Court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir.1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Once the moving party has met its burden, the non-moving party may not rest on the allegations of its pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e); *Anderson*, 477 U.S. at 257, 106 S.Ct. 2505; *City of Mt. Pleasant v. Associated Elec. Coop., Inc.*, 838 F.2d 268, 273–74 (8th Cir. 1988). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*,

477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

*Cause of Action Under Title IX for Student–on–Student Harassment*

■■■■■ Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving Federal financial assistance." 20 U.S.C. § 1681. Title IX provides a private cause of action against a recipient of federal funds for discrimination based on sex. *Cannon v. Univ. of Chicago,* 441 U.S. 677, 708–09, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979). Sexual harassment and sexual abuse constitute discrimination under Title IX. *Franklin v. Gwinnett County Public Schools,* 503 U.S. 60,75, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992); *Ostrander v. Duggan,* 341 F.3d 745, 750 (8th Cir.2003). However, a recipient of federal funds may only be liable for damages arising from the recipient's misconduct. *Davis v. Monroe County Bd. of Educ.,* 526 U.S. 629, 640, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999).

In order for Plaintiff Judy Doe to prevail on her Title IX claim against the Defendant School District for student-on-student harassment, she must show that the school district (1) acted with deliberate indifference to known acts of harassment in its programs or activities; (2) the harassment was so severe, pervasive, and objectively offensive in nature that (3) Plaintiff Judy Doe was effectively barred access to an educational opportunity or benefit. *Id.* at 650–651, 119 S.Ct. 1661. In addressing the "known acts of harassment" in this case, particularly the kissing incident involving the two first graders, this Court appreciates the concerns expressed by the Seventh Circuit Court of Appeals in dealing with a similar claim involving kindergarten students. The Seventh Circuit observed as follows:

> There is a threshold question, altogether reasonable and rational, of whether a five or six year old kindergartner can ever engage in conduct constituting "sexual harassment" or "gender discrimination" under Title IX. Common sense, at least, would reject any such extension of Title IX. Nevertheless, we need not answer whether six year old Jason should carry the label of "sexual harasser," as we will assume *arguendo* that Jason's conduct was "sexual harassment."

*Gabrielle M. v. Park Forest–Chicago Heights, Illinois School District 163,* 315 F.3d 817, 821–22 (7th Cir.2003). The Supreme Court also acknowledged the limitations on the conduct of young children constituting actionable sexual harassment when it opined as follows:

> Whether gender-oriented conduct rises to the level of actionable "harassment" thus "depends on a constellation of surrounding circumstances, expectations and relationships," (citation omitted) including, but not limited to, the ages of the harasser and the victim and the number of individuals involved .... Courts, moreover, must bear in mind that schools are unlike the adult workplace and that children may regularly interact in a manner that would be unacceptable among adults.

*Davis,* 526 U.S. at 651, 119 S.Ct. 1661.

■■■■ This Court will assume for purposes of analysis that there were known acts of harassment involving Judy Doe and John Smith. Having made this assumption, the Court must determine whether genuine issues of material fact exist as to whether the harassment was so severe, pervasive, and objectively offensive in nature that Judy Doe was effectively barred access to an educational opportunity or

benefit. In light of the Supreme Court's acknowledgment that, in theory, a single instance of one-on-one peer harassment could be serious enough to have the effect of denying the victim equal access to an educational program or activity, *Id.* at 652–53, 119 S.Ct. 1661, Plaintiff Judy Doe has at most raised a genuine issue of material fact as to whether the assumed harassment could be characterized as severe, pervasive, and objectively offensive in nature. Plaintiff has failed, however, to raise a genuine issue of material fact as to whether she was effectively barred access to an educational program.

Although Plaintiff Judy Doe has presented evidence that she did not return to Tea Elementary School after the first grade, she has not presented evidence that harassment at Tea Elementary School prevented Judy from access to an educational opportunity or benefit. She has not presented evidence that her grades were dropping or that her learning was otherwise compromised by the harassment. Jane Doe testified as follows regarding the reason Judy Doe left Tea Elementary School:

> [Counsel]: Tell me how the decision was made to take her out of Tea and enroll her at Christ the King?
>
> [Jane Doe]: Well, Cynthia Pilkington [child psychologist] and I talked. I had almost made my decision anyway to take her out of Tea, but she thought it would be best if my daughter didn't see the boy on a regular basis at school. And so I talked to the priest in Tea, he thought it would be a good idea if we could put her in Catholic schools so she could get interested in spirituality and things.
>
> [Counsel]: Okay. So I understand your claim as to why she stopped going to Tea, that was based upon a recommendation from Pilkington.
>
> [Jane Doe]: No, I had—David actually said, no, she is not going back to that school. And I had thought that—that way also.

Plaintiff Judy Doe has failed to produce evidence of harassment that had the systemic effect of denying her access to an educational program or activity so as to support a Title IX claim against Defendant Lennox School District. *See Hawkins v. Sarasota County School Board,* 322 F.3d 1279 (11th Cir.2003). Even if she had produced such evidence, she clearly failed to create a genuine issue of material fact as to whether the school district acted with *deliberate indifference* to the harassment.

Plaintiff does not dispute that John Smith lost his recess and received a verbal reprimand as a result of the kissing incident, and that he was suspended from school for ten days and not allowed to return to school without written evidence of his not being a danger, after the March 20, 2001, incident. Plaintiff does not dispute that Jane Doe was promptly contacted after each incident. Plaintiff does not dispute that both law enforcement and the Department of Social Services were contacted after the latter incident. Plaintiff does not dispute that the school placed John Smith in another classroom and took measures to keep the children separated after the March 20, 2001, incident. Plaintiff concedes that the school offered to provide counseling to her to assist her in dealing with the incident.

 Although Judy's mother and father figure wanted John Smith to be expelled from school, the Supreme Court has rejected the position that nothing short of expulsion of the perpetrator of the harassment protects a school system from liability or damages. *See Davis,* 526 U.S. at 648, 119 S.Ct. 1661. Courts should refrain from second-guessing the school adminis-

trators in the disciplinary decisions chosen by the schools in dealing with peer harassment. *Id.* Plaintiff also contends that their was not compliance with the school district's policy regarding the manner in which the investigation was conducted, but cannot contend that no investigation was conducted or that the allegations were not taken seriously in the investigation. Victims of peer harassment do not have a Title IX right to make particular remedial demands. *Id.* Jane Doe and the father figure's dissatisfaction with the school's response to the harassment does not warrant characterizing the response as deliberately indifferent. *See Ostrander v. Duggan,* 341 F.3d 745, 751 (8th Cir.2003). Because there is no evidence that the school district acted with deliberate indifference regarding the allegations of sexual harassment, Defendant Lennox School District is entitled to summary judgment on this cause of action.

*Cause of Action Under 29 U.S.C. § 794 (Section 504) and 42 U.S.C. 12132 (Title II of ADA)*

■ Plaintiff Judy Doe contends that Defendants violated her rights under 29 U.S.C. § 794 (Section 504) and 42 U.S.C. § 12132 (Title II of the ADA). Section 504 of the Rehabilitation Act mandates that no "otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity involving Federal financial assistance ...." 29 U.S.C. § 794(a). Likewise, Title II of the Americans with Disabilities Act (ADA) prohibits "qualified individuals with disabilities from

being excluded from participation in or the benefits of the services. programs, or activities of a public entity." *Randolph v. Rodgers,* 170 F.3d 850, 857 (8th Cir.1999). The enforcement, remedies, and rights are the same under both Title II of the ADA and Section 504 of the Rehabilitation Act. *See Hoekstra v. Independent Sch. Dist., No. 283,* 103 F.3d 624, 626 (8th Cir.1996).

■ Judy Doe received speech therapy from the Defendant Lennox School District based upon her difficulties processing verbal information. Judy's Individualized Education Plan (IEP) from January of 2001 states that Judy "has difficulty understanding anything that requires her to process information.... When information is presented orally, she doesn't seem to process the information at the same rate as her peers." Judy contends that her disability prevented her from avoiding the sexual encounter with John Smith. Judy further contends that Defendants Van Overmeer and DeGroot did not adequately consider her disability and the role it played in the harassment when they investigated and took steps to remedy the harassment. She further contends that these Defendants were insensitive to her disability by assigning responsibility to Judy for the incidents which are the basis of her claim of harassment.

Even if Plaintiff has created genuine issues of material fact as to whether she is a qualified individual with a disability within the meaning of Title II and Section 504,[1] and as to whether she was discriminated against solely because of her disability, she has not established a prima facie case under Title II and Section 504. In order to

1. The term "disability" is defined as a "physical or mental impairment that substantially limits one or more of the major life activities of such individual." 29 C.F.R. § 1630.2(g)(1). The term "substantially limits" is defined as being "[u]nable to perform a major life activity that the average person in the general population can perform." 29 C.F.R. § 1630.2(j)(1)(i).

establish a prima facie case under Title II and Section 504 based on educational services for disabled children, the Plaintiff must prove that school officials acted in bad faith or with gross misjudgment. *Birmingham v. Omaha Sch. Dist.*, 220 F.3d 850, 853 (8th Cir.2000); *Hoekstra*, 103 F.3d at 627. Plaintiff has failed to create a genuine issue of material fact with regard to either bad faith or gross misjudgment. The school officials, regardless of the extent of their consideration of Judy's disability, responded to the alleged harassment promptly and reasonably. For this reason, Defendants are entitled to summary judgment against Plaintiffs on the Title II and Section 504 cause of action.

*State Law Claims*

██ Having resolved all of the federal claims, this Court must now determine whether it should exercise supplemental jurisdiction over Plaintiffs' state law claims of intentional infliction of emotional distress and negligence. The district courts may decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(3) if the district court has dismissed all claims over which it has original jurisdiction. Issues such as judicial efficiency, convenience, and fairness to the parties are relevant to the exercise of a federal district court's discretion as to whether it will adjudicate the pendent claims when the federal claims have been dismissed. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Condor Corp. v. St. Paul*, 912 F.2d 215, 221 (8th Cir. 1990). Although the amount of time this Court and the parties have expended on the state claims may weigh in favor of this Court determining the state claims, other considerations support allowing the state courts to adjudicate these claims.

██ It may be appropriate, however, to leave to the state courts the determination of whether summary judgment is appropriate on the state claims considering the issues involved in the negligence cause of action. The parties disagree as to whether the Defendant Lennox School District owed Plaintiff Judy Doe a duty to protect her from the harm she suffered under the facts of this case. Whether a duty exists in a case of tort liability is a matter of law for the courts to determine. *E.P. and W.P. v. Riley*, 1999 SD 163, ¶ 5, 604 N.W.2d 7, 24; *Gilbert v. United National Bank*, 436 N.W.2d 23, 27 (S.D.1989). As there are no South Dakota state court decisions which address the duty to supervise in the factual setting that is presented in this case, considerations of comity support allowing the South Dakota state courts to define the required extent of the duty to supervise in the case at hand. *See Condor*, 912 F.2d at 220.

Defendants cite *Hansen v. South Dakota DOT*, 1998 SD 109, ¶ 15, 584 N.W.2d 881, 884, in support of their position that sovereign immunity is available to a public entity that has purchased liability insurance if the alleged negligence arises from the performance of a discretionary act.[2] If sovereign immunity is available to Defendant Lennox School District, in spite of the apparent purchase of liability insurance,[3]

**2.** The Court notes that the *Hansen* case involved South Dakota's Public Entity Pool for Liability (PEPL) which is the sole source for payment of valid tort claims against all member public entities of the state and their officers and employees. S.D.C.L. § 3–22–1 specifically provides, "Nothing in this chapter [establishing PEPL] shall be determined to be an abrogation, change or modification of the doctrine of governmental or sovereign immunity created by any statute, judicial opinion, ordinance, resolution or tort claims act . . . ."

**3.** In *Brown v. Egan Consolidated Sch. Dist. # 50–2*, 449 N.W.2d 259 (S.D.1989), which was decided after *Hansen*, the South Dakota Supreme Court held that sovereign immunity existed for a school district which was sued

the alleged negligent act must be analyzed to determine whether it is discretionary or ministerial. The South Dakota Supreme Court has recognized the "difficulties inherent" in analyzing the "ministerial/discretionary dichotomy." 584 N.W.2d at 886.

The district courts may decline to exercise supplemental jurisdiction over a claim if the claim involves a novel or complex issue of state law. 28 U.S.C. § 1367(c)(1). Since the South Dakota Supreme Court has not yet defined the duty to supervise in a factual setting similar to the factual setting in the case at hand, the extent of the duty to supervise is the type of issue over which the federal courts should hesitate to exercise supplemental jurisdiction. *See Fielder v. Credit Acceptance Corp.*, 188 F.3d 1031, 1038 (8th Cir. 1999). In light of all of the circumstances presented in this case, this Court declines to exercise supplemental jurisdiction over the state claims, and such claims will be dismissed without prejudice. Accordingly,

IT IS ORDERED:

1. that Defendants' Motion for Summary Judgment is granted as to Count I of the Plaintiffs' Amended Complaint alleging a Title IX violation;

2. that Defendants' Motion for Summary Judgment is granted with respect to Count III of the Plaintiffs' Amended Complaint alleging violations of Section 504 of the Rehabilitation Act and Title II of the ADA;

3. that Count V of the Plaintiffs' Amended Complaint alleging intentional infliction of emotional distress is dismissed without prejudice; and

4. that Count VI of the Plaintiffs' Amended Complaint alleging negligence is dismissed without prejudice.

### JUDGMENT

In accordance with this Court's Memorandum and Order dated June 23, 2003, regarding the Defendants' motion to dismiss, and this Court's Memorandum and Order dated December 18, 2003, regarding Defendants' motion for summary judgment,

IT IS ORDERED, ADJUDGED and DECREED that Counts I, II, III and IV of the Plaintiffs' Amended Complaint are dismissed with prejudice.

IT IS FURTHER ORDERED, ADJUDGED and DECREED that Counts V and VI of the Plaintiffs' Amended Complaint are dismissed without prejudice.

by a driver that collided with a school bus, but further held that the immunity was waived to the limits of the district's insurance coverage.