Steven DOHMEN and Deborah Dickey
on behalf of Justin DOHMEN, a
minor child, Plaintiffs,

v.

TWIN RIVERS PUBLIC SCHOOLS;
Twin Rivers School District; Larry
Stek; Craig Gertsch; Dave Baxa; Deb
Engle; Lee Van Winkle; Susan
Cromwell; Darlene Whitlow; Dale
Heth; and Donald Graff, Defendants.

No. 4:02 CV 3052.

United States District Court,
D. Nebraska.

June 14, 2002.

Darik J. VonLoh, Lincoln, NE, for Plaintiffs.

Rodney M. Confer, Knudsen, Berkheimer Law Firm, Lincoln, NE, for Defendants.

## MEMORANDUM AND ORDER

KOPF, District Judge.

This action is brought on behalf of a special education student to recover damages under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131–12165. It is claimed that the defendant school district, board members, and school officials discriminated against the plaintiffs' son by imposing a one-year expulsion for his bringing a gun onto school property.[1]

1. While the plaintiffs' complaint names both "Twin Rivers Public Schools" and "Twin Rivers School District," these defendants presumably are a single corporate entity, the legal name of which may be neither designation. *See* Neb.Rev.Stat. Ann. § 79–405 (Michie 1997) ("Every duly organized school district shall be a body corporate and possess all the usual powers of a corporation for public purposes, . . . . The county in which the principal office of the school district is located together with the school district number assigned pursuant to section 79–307 shall constitute the corporate name of the school district, . . . ."). The plaintiffs allege that "Defendant Twin Rivers Public Schools is a political subdivision organized under the laws of the State of Nebraska." (Filing 1, ¶ 6.) The defendants Larry Stek, Craig Gertsch, Dave Baxa, Deb Engel, and Lee Van Winkle are each alleged to be "a member of the board of education of Twin Rivers School District." (*Id.*, ¶¶ 7–11.) Defendant Dale Heth is alleged to be "the superintendent of the Twin Rivers School District." (*Id.*, ¶ 12.) Defendant Darlene Whitlow is alleged to be "the secretary of the board of Twin Rivers School District." (*Id.*, ¶ 13.) Defendant Donald Graff is alleged to be "the principal of Twin Rivers School District." (*Id.*, ¶ 14.) Defendant Susan Cromwell is not identified in the complaint. It is unclear whether the plaintiffs intend to sue these persons in their individual or official capacities, or both. The Eighth Circuit Court of Appeals has advised and encouraged litigants to "clearly indicate both the parties being sued and their capacity in the caption," *Jackson v. Crews*, 873 F.2d 1105, 1107 (8th Cir.1989), and, if applicable, to incorporate language in the complaint that "Plaintiff sues each and all defendants in both their individual and official capacities," *Rollins by Agosta v. Farmer*, 731 F.2d 533, 536 n. 3 (8th Cir.1984), but Fed.R.Civ.P. 9(a) provides that the capacity of a party being sued need not be pled, "except to the extent required to show the jurisdiction of the court." Although none of the individual de-

The defendants have moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6), and contend that (1) the plaintiffs' exclusive remedy is under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400–1487; (2) the plaintiffs have not exhausted their administrative remedies under the IDEA; (3) it has not been alleged that the school officials acted in bad faith or with gross misjudgment; and (4) the expulsion decision was made pursuant to state and federal law, and, consequently, cannot have been made in bad faith and cannot be a gross misjudgment. (Filing 16.)

## I. Background

The plaintiffs allege that their son, Justin, "has been identified as a child with a disability,[2] and [he] receives services under 20 U.S.C. §§ 1412 and 1415." (Filing 1, "Complaint," ¶ 15.) "On or about December 10, 2001, Justin was expelled from the Twin River Public Schools in Genoa, Nebraska, for a period of one year under Neb.Rev.Stat. § 79–267(5) and (9).[3] Said expulsion was the result of a firearm found in Justin's pickup truck parked on school property." (Complaint, ¶ 16.) It is alleged that "[s]aid search of Justin's pickup truck was unreasonable and in violation of the Fourth Amendment to the U.S. Constitution, and those guidelines set forth in *New Jersey v. T.L.O.*, 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985)." (Complaint, ¶ 17.) It is also generally alleged that "[s]aid expulsion was in violation of Justin's civil rights and is a violation of the Americans with Disabilities Act in that he has been treated in a fashion dissimilar

fendants has challenged his or her inclusion in the lawsuit, I note that public officials cannot be sued in their individual capacities under Title II of the ADA, *see Alsbrook v. City of Maumelle*, 184 F.3d 999, 1010 (8th Cir. 1999) (en banc) *cert. dismissed,* 529 U.S. 1001, 120 S.Ct. 1265, 146 L.Ed.2d 215 (2000), and that an official-capacity suit is the equivalent of a suit against the political subdivision itself, *see Doe by and Through Doe v. Washington County*, 150 F.3d 920, 923 (8th Cir.1998).

2. A "child with a disability" is defined in the IDEA to mean a child "(i) with mental retardation, hearing impairments (including deafness), speech or language impairments, visual impairments (including blindness), serious emotional disturbance (hereinafter referred to as "emotional disturbance"), orthopedic impairments, autism, traumatic brain injury, other health impairments, or specific learning disabilities; and (ii) who, by reason thereof, needs special education and related services." 20 U.S.C.A. § 1401(3)(A) (West 2000). A special education student is not necessarily a "qualified individual with a disability" for purposes of Title II of the ADA. The ADA defines "disability" to mean "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impair-

ment; or (C) being regarded as having such an impairment." 42 U.S.C.A. § 12102(2) (West 1995).

3. This state statute provides: "The following student conduct shall constitute grounds for long-term suspension, expulsion, or mandatory reassignment, subject to the procedural provisions of the Student Discipline Act, when such activity occurs on school grounds, ... (5) Knowingly possessing, handling, or transmitting any object or material that is ordinarily or generally considered a weapon; ... (9) Engaging in any other activity forbidden by the laws of the State of Nebraska which activity constitutes a danger to other students or interferes with school purposes;...." Neb. Rev.Stat. Ann. § 79–267 (Michie 1997). The Nebraska Legislature has also directed each school district to "adopt a policy requiring the expulsion from school for a period of not less than one year of any student who is determined to have knowingly and intentionally possessed, used, or transmitted a firearm on school grounds,.... This policy shall authorize the superintendent or the school board or board of education to modify the expulsion requirement on an individual basis." Neb.Rev.Stat. Ann. § 79–263(1) (Michie 1997). This legislation evidently was passed in response to the federal Gun Free School Act of 1994, 20 U.S.C. § 8921(b)(1).

from other children in his same situation and circumstances." (Complaint, ¶ 21.)

Specifically, it is claimed that two Twin Rivers students, who were not identified as disabled and who were not receiving services under the IDEA, were permitted to remain in school during the fall of 2001 after engaging in activity that is covered by section 79–267; one of these students allegedly constructed and detonated an explosive device during shop class, while the other student brought a loaded weapon to school. (Complaint, ¶¶ 18, 19.) It is also claimed that "[o]ther students have been caught with firearms on school premises at Twin Rivers Public Schools but have not been expelled." (Complaint, ¶ 20.)

The plaintiffs allege that "Justin has suffered damages as a result of the expulsion from school in that he is a senior and will be unable to graduate with his class or participate in any senior extracurricular activities. Additionally, Justin has suffered trauma and emotional distress because of the expulsion." (Complaint, ¶ 22.) The plaintiffs seek to recover "compensatory and punitive damages," "attorney's fees and costs as allowed by statute," and "other and further relief as the Court deems just and equitable." (Complaint, demand for relief.)

Despite the alleged Fourth Amendment violation, the plaintiffs do not purport to bring their action under 42 U.S.C. § 1983. They merely allege that "[t]he court has jurisdiction over this matter under 42 U.S.C. §§ 12132[4] and 12133,[5] and 29 U.S.C. § 794a."[6] (Complaint, ¶ 1.) The cited sections comprise a "daisy-chain of cross-references" which permit a claim arising under Title II of the ADA, not involving employment discrimination, to be pursued in court in the same manner as a claim arising under Title VI of the Civil Rights Act of 1964.[7] *See Jeremy H. by Hunter v. Mount Lebanon School Dist.*, 95 F.3d 272, 282 n. 17 (3rd Cir.1996). As to such claims, there is an implied private right of action which does not require exhaustion of administrative remedies before the Equal Employment Opportunity Commission. *See Randolph v. Rodgers*, 253 F.3d 342, 346–47 & n. 8–10 (8th Cir.2001).

---

**4.** Section 12132 (Section 202 of Title II of the ADA) provides: "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C.A. § 12132 (West 1995).

**5.** Section 12133 (Section 203 of Title II of the ADA), provides: "The remedies, procedures, and rights set forth in section 794a of Title 29 shall be the remedies, procedures, and rights this subchapter provides to any person alleging discrimination on the basis of disability in violation of section 12132 of this title." 42 U.S.C.A. § 12133 (West 1995).

**6.** Section § 794a (Section 505 of the Rehabilitation Act), subsection (a)(2), provides: "The remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000d et seq.] shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under section 794 of this title." 29 U.S.C.A. § 794a(a)(2) (West 1999). Section 794 (Section 504 of the Rehabilitation Act), subsection (a), provides, in part, that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...." 29 U.S.C.A. § 794(a) (West Supp.2001). The plaintiffs, however, do not claim a violation of the Rehabilitation Act.

**7.** Although not alleged in the complaint, it appears that the court's jurisdiction over this matter actually arises under 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights).

The plaintiffs specifically represent that they are not attempting to proceed under the IDEA in this action, and also concede that their administrative remedies under the IDEA have not been exhausted. In responding to the pending motion, the plaintiffs state that they "allege Defendants' (sic) violated the Americans With Disabilities Act (ADA), 42 U.S.C. § 12132 and 12133, when Justin Dohmen was subjected to discrimination by Defendants' (sic) when other students who are not special education students were not expelled from school for committing similar offenses." (Plaintiffs' response brief to defendants' motion to dismiss, at 1.) "Plaintiffs agree that if Plaintiffs were seeking relief under the IDEA that Plaintiffs have not properly pled a cause of action or that the remedies of the IDEA must be pursued before further action could ensue." (*Id.*, at 3.) They maintain, however, that "Plaintiffs are not seeking relief under the IDEA but are seeking relief under the ADA. In Plaintiffs (sic) cause of action, the IDEA plays the role of identification of Justin Dohmen as a person covered under the ADA, not as a basis for the claims made in the ADA action." (*Id.*) "If Plaintiffs were seeking relief related to Justin Dohmen's education and/or educational placement, then Plaintiffs' cause of action would fail; however Plaintiffs are seeking monetary damages based upon discriminatory treatment of Justin Dohmen, not his education or educational placement." (*Id.*, at 2–3.)

## II. Discussion

The IDEA was intended to ensure that children with disabilities receive an education that is both appropriate and free. *Costello v. Mitchell Public School Dist.*, 266 F.3d 916, 922 (8th Cir.2001) (citing *Florence Cty. Sch. Dist. 4 v. Carter*, 510 U.S. 7, 13, 114 S.Ct. 361, 126 L.Ed.2d 284 (1993); 20 U.S.C. § 1400(d)(1)(A)). As defined in the Act, 20 U.S.C. § 1401(8), a "free appropriate public education" in-

cludes both instruction, which must be specially designed to suit the needs of the disabled child, *see* 20 U.S.C. § 1401(25), and "related services," including "such developmental, corrective, and other supportive services ... as may be required to assist a child with a disability to benefit from special education," 20 U.S.C. § 1401(22). *Independent School Dist. No. 284 v. A.C.*, 258 F.3d 769, 773 (8th Cir. 2001). The services that a school district will provide to a child are to be summarized in a written statement called an individualized education program or IEP. *Gill v. Columbia 93 School Dist.*, 217 F.3d 1027, 1034 (8th Cir.2000) (citing 20 U.S.C. § 1414(d)(1)(A)). If a child requires special education, a school district must convene a team to formulate an IEP in light of the child's abilities and parental views about the child's education. *Id.* (citing 34 C.F.R. §§ 300.343(b)(2), 300.346(a)(1)). The parents, the child's teacher, and a school official knowledgeable about special education must be included on the team which devises and reviews the IEP, and parents are free to invite other individuals with expertise to participate. *Id.* at 1034–35 (citing *School Comm. of Burlington v. Dept. of Ed. of Mass.*, 471 U.S. 359, 368, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985); *Doe by Gonzales v. Maher*, 793 F.2d 1470, 1489 (9th Cir.1986); 34 C.F.R. § 300.344). *See also* 20 U.S.C. § 1414(d)(1)(B) (defining "IEP Team").

Throughout this process parents must be notified of their procedural rights under IDEA, which include the right to an administrative hearing to evaluate the IEP team's decisions and the right to seek review by a federal court. *Id.* at 1035 (citing 20 U.S.C. §§ 1415(d)(2), 1415(f), 1415(i)(2)). The parents of a child who has a disability within the meaning of the IDEA are entitled to written prior notice whenever the local educational agency proposes or refuses to initiate or change "the identifica-

tion, evaluation, or educational placement of the child." *Costello,* 266 F.3d at 922 (citing 20 U.S.C. § 1415(b)(3)).

"If a child with a disability misbehaves in school, the IDEA provides detailed procedures that the local educational agency must follow to suspend or expel him. To begin with, the Act gives 'school personnel' the unilateral power to suspend a child with a disability for up to ten days as they would a non-disabled child-that is, without providing the child with an 'alternative educational setting' (such as out-of-school tutoring).[8] *See* 20 U.S.C. § 1415(k)(1)(A)(i)." *Farrin v. Maine School Administrative Dist. No. 59,* 165 F.Supp.2d 37, 41 (D.Me.2001). "If a child with a disability brings drugs or weapons to school, then the IDEA authorizes school personnel to 'remove' the student to an 'interim alternative educational setting' for up to an additional forty-five days. *See* 20 U.S.C. § 1415(k)(1)(A)(ii)." *Id.* "This forty-five day removal typically occurs after the initial tenday suspension mentioned above. *See* 64 Fed.Reg. 12,620 (Mar. 12, 1999)." *Id.* "Recognizing that schools have their own disciplinary rules applicable to all students, the IDEA also permits a school to discipline a child with a disability for more than ten days as it would discipline a non-disabled child, provided the disabled child's misbehavior was not a 'manifestation' of his disability.[9] *See* 20 U.S.C. § 1415(k)(5)(A). This power to 'long-term suspend' a child comes into play when children with disabilities commit of-

**8.** The Nebraska Student Discipline Act, Neb. Rev.Stat. Ann. §§ 79–254 to 79–294 (Michie 1997 & Lexis Cum.Supp.2001), permits the school principal to exclude a student from attending school for a period of up to five school days ("short-term suspension") for conduct constituting grounds for expulsion. *See* § 79–265(1)(a). Exclusion for a longer period is authorized if the school superintendent determines that the student's conduct presents a clear threat to the physical safety of himself or others or is extremely disruptive, but there must be a procedure to permit a hearing to be conducted within ten school days after the initial exclusion. *See* § 79–264(1)(b).

**9.** Long-term suspension, expulsion, or mandatory reassignment under the Nebraska Student Discipline Act entails additional notice requirements and also requires that the student and his parents be given an opportunity to request that a hearing be conducted before the discipline is imposed. *See* § 79–268(1),(2). If a hearing is requested within five school days after receipt of notice of the principal's decision to impose such discipline, a hearing examiner must be appointed by the school superintendent and, unless there is good cause for postponement, the hearing must be held within five school days after the request. *See* § 79–269. The school principal may suspend the student during the interim if circumstances warrant. *See* § 79–268(3). If a hearing is not requested within five school days, the recommended punishment automatically goes into effect; a hearing may still be held, however, if requested within thirty calendar days. *See* §§ 79–271, 79–272. Following a hearing, which may include the receipt of oral testimony in addition to documentary evidence, *see* §§ 79–273 to 79–278, the hearing examiner issues a report and recommendation to the school superintendent regarding any disciplinary action to be taken; the superintendent may change, revoke, or impose the sanction recommended by the hearing officer, but he cannot impose a more severe sanction. *See* § 79–282. The student or his parents may appeal from the superintendent's decision within seven school days, in which case the school board must conduct its own hearing, normally within ten school days thereafter; the appeal is based upon the record that was developed before the hearing examiner and such additional evidence as the board determines should be admitted to avoid a substantial threat of unfairness. *See* § 79–285. The board may alter the superintendent's decision, but it cannot impose a more severe sanction. *See* § 79–286(3). The final action of the board is subject to judicial review by the filing of a petition in the district court of the applicable county within thirty days, and the district court's judgment is thereafter appealable as provided in the Nebraska Administrative Procedure Act. *See* §§ 79–288 to 79–292.

fenses that are not covered by the IDEA's forty-five day suspension provisions (that is, that do not involve drug or weapon possession), or in cases … in which the forty-five day suspension is not adequate punishment." *Id.*

"Therefore, a child with a disability caught bringing drugs [or a weapon] to school may be subject to the following disciplinary measures. First, he may be immediately suspended from school, without alternative educational services, for up to ten days. Second, he may serve an *additional* forty-five day suspension, during which time the school must provide him with alternative educational services. Third, in addition to or in place of the forty-five day suspension under the IDEA, he may be suspended or expelled from school under generally applicable school disciplinary rules, *provided* his behavior was not a manifestation of his disability." *Id.* at 41–42 (citations omitted; emphasis in original).

"Whenever discipline results in a child with a disability being kept out of school for more than ten consecutive days, either pursuant to the IDEA or generally applicable school rules, a so-called 'change of placement' has occurred. *See* 34 C.F.R. § 300.519. When this happens, an additional set of procedural protections kicks in to protect the child." *Id.* at 42. "First, no later than the day the decision to change the placement is made, the child's parents must receive written notice of the decision and their procedural rights. *See* 20 U.S.C. § 1415(k)(4)(A)(i). The parents' procedural rights include the right to appeal the decision to a hearing officer and the right to appeal the hearing officer's decision to federal court. *See generally id.* at § 1415(d)(2)." *Id.* "Second, as of the eleventh day of suspension (*i.e.* the change of placement), the school must provide the child with an alternative educational setting. *See id.* at § 300.520(a)(1)(ii). The

setting must be sufficient to allow the child to 'continue to progress in the general curriculum.' *See* 20 U.S.C. § 1415(k)(3)(B); *id.* at § 300.522." *Id.* "Third, within ten days of the decision to change the child's placement, the [IEP Team] must convene to determine if the behavior was a manifestation of the child's disability. *See* 20 U.S.C. § 1415(k)(4)(A)(ii)." *Id.* "A finding that the behavior was not a manifestation clears the way for the school to discipline the child pursuant to generally applicable school rules. *See id.* at § 1415(k)(5)(A). If the [IEP Team] decides the behavior was a manifestation, however, then the generally applicable rules cannot be applied to the child. *See id.*" *Id.* "Finally, within ten days of the change of a child's placement, the child's [IEP Team] must meet to perform a 'functional behavior assessment.' *See* 20 U.S.C. § 1415(k)(1)(B); 34 C.F.R. § 300.520." *Id.*

"The IDEA gives a disabled child's parents a number of procedural rights intended to ensure their participation in the development of their child's program and placement. *See generally* 20 U.S.C. § 1415(b). In particular, the parents have a right to request a 'due process hearing' to challenge the adequacy of their child's IEP, the result of a manifestation hearing, or the school's decision to take disciplinary action. *See id.* at § 1415(f); 1415(b)(6); 1415(k)(6)." *Id.* at 43. "If the parents wish, they may appeal the officer's decision to a federal district court. *See* 20 U.S.C. § 1415(i)(2)." *Id.* "While an appeal by the parents is pending, a child with a disability who has been suspended or expelled from school may 'stay put' in his 'current educational setting' (*i.e.*, in school). *See id.* at § 1415(k)(7). However, a child suspended for drug or weapon possession under the IDEA's forty-five day rule must serve out his suspension in an alternative educational setting, even pending an appeal of the suspension. *See id.*" *Id.*

Inasmuch as the plaintiffs in this case allege that their son was expelled for one year, and because they make no claim that the IDEA procedures were not followed, it may be assumed that the IEP team determined that Justin's behavior in bringing a firearm onto school property was not a manifestation of his disability. Only after such a determination has been made may "the relevant disciplinary procedures applicable to children without disabilities [*i.e.,* expulsion] ... be applied to the child in the same manner in which they would be applied to children without disabilities." *See* 20 U.S.C. § 1415(k)(5)(A).[10]

Although the plaintiffs' complaint is framed as involving a only claim that Justin was subjected to discrimination by reason of his disability, in violation of § 202 of Title II of the ADA, 42 U.S.C. § 12132, the facts alleged would also support a claim that the school district violated the IDEA because the disciplinary procedures of Neb.Rev.Stat. § 79–267(5),(9) (authorizing the expulsion of a student for possessing a weapon or endangering other students) were not "applied to [Justin] in the same manner in which they [were] applied to children without disabilities."[11] The expulsion decision was a "decision regarding placement" which the plaintiffs had the right to appeal under 20 U.S.C. § 1415(k)(A)(i). *See Hale ex rel. Hale v. Poplar Bluffs R–I School Dist.,* 280 F.3d 831, 834 (8th Cir.2002) (expulsion from school or some other change in location made on account of the disabled child or his behavior has usually been deemed a change in educational placement). *See also* 20 U.S.C. § 1415(k)(7)(B) ("If a child is placed in an interim alternative educational setting pursuant to paragraph

(1)(A)(ii) ... and school personnel propose to change the child's placement after expiration of the interim alternative placement, during the pendency of any proceeding to challenge the proposed change in placement, the child shall remain in the current placement (the child's placement prior to the interim alternative educational setting), except as provided in subparagraph (C) [which allows the local educational agency to request an expedited hearing])." Judicial review of the hearing officer's decision is afforded by 20 U.S.C. § 1415(i)(2)(A).

I therefore conclude that the defendants have raised pertinent issues as to whether the plaintiffs' ADA claim either is absolutely barred by the IDEA or else cannot be brought until administrative remedies have been exhausted under the IDEA. Although apparently overlooked by the parties, both of these issues are specifically addressed in the IDEA, which provides:

Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C.A. § 12101 et seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C.A. § 791 et seq.], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C.A. § 1415(*l*)(West 2000).

It is thus clear that the IDEA is not the exclusive avenue for the plaintiffs to obtain

---

**10.** A child with disabilities who is expelled from school remains entitled to receive a free appropriate education. *See* 20 U.S.C. § 1412(a)(1)(A).

**11.** More generally, the complaint can be construed to allege that Justin has not received an appropriate education because of his disability.

relief on the facts alleged, but that if the relief they are seeking in their ADA claim is also available under the IDEA, then the IDEA's exhaustion requirements apply. This, however, does not fully resolve the matter, since the two broad issues that have been raised by the defendants can be narrowed to the following: (1) Are the plaintiffs' available remedies under the ADA merely equivalent to those under the IDEA? (2) If not, is the plaintiffs' action exempt from the statutory exhaustion requirement?

## A. Available Remedies

▇▇▇ In the Eighth Circuit, compensatory and punitive damages are not available under the IDEA. *See Heidemann v. Rother,* 84 F.3d 1021, 1033 (8th Cir.1996); *Hoekstra v. Independent School Dist. No. 283,* 103 F.3d 624, 625–26 (8th Cir.1996), *cert. denied,* 520 U.S. 1244, 117 S.Ct. 1852, 137 L.Ed.2d 1054 (1997); *Fort Zumwalt School Dist. v. Clynes,* 119 F.3d 607, 615 (8th Cir.1997), *cert. denied,* 523 U.S. 1137, 118 S.Ct. 1840, 140 L.Ed.2d 1090 (1998); *Thompson v. Board of Special School Dist. No. 1,* 144 F.3d 574, 580 (8th Cir.1998); *Birmingham v. Omaha School Dist.,* 220 F.3d 850, 856 (8th Cir.2000). Under the ADA, both types of damages are available. *Gorman v. Easley,* 257 F.3d 738, 745–49 (8th Cir.2001), *cert. granted sub nom., Barnes v. Gorman,* —— U.S. ——, 122 S.Ct. 865, 151 L.Ed.2d 739 (2002).

▇▇▇ The difference in available remedies under these acts stems from the fact that the IDEA contains an express provision for the bringing of a civil action, whereas Title II of the ADA merely incorporates by reference the implied judicial remedies of Title VI of the Civil Rights Act of 1964. Thus, the IDEA directs that the court, after receiving the records of the administrative proceedings and hearing any additional evidence, "shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(B)(iii). The Eighth Circuit has held that "such relief" includes compensatory education services but excludes damages. *Birmingham, supra.* This view is shared by at least five other courts of appeals. *See Polera v. Board of Educ. of Newburgh,* 288 F.3d 478, 485 (2nd Cir.2002), and cases cited therein. Under the ADA, by contrast, it is presumed from Congress' failure to include any clear direction to the contrary that "the federal courts have the power to award any appropriate relief in a cognizable cause of action brought pursuant to a federal statute." *Gorman,* 257 F.3d at 745 (quoting *Franklin v. Gwinnett County Public Schools,* 503 U.S. 60, 70–71, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992)).[12]

The Court of Appeals has held that plaintiffs may not circumvent the limitation on available remedies under the IDEA by recasting an alleged violation of the Act into a § 1983 claim. *See Heidemann, supra* ("We simply hold that plaintiffs' claims based upon defendants' alleged violations of the IDEA may not be pursued in this § 1983 action because general and punitive damages for the types of injuries alleged by plaintiffs are not available under the IDEA."); *Hoekstra, supra* (plaintiffs seeking damages under § 1983 for alleged deprivation of their daughter's right to a free appropriate public education under the IDEA failed to state a claim under the IDEA, and thus failed to state a claim under § 1983); *Birmingham, supra* (dam-

---

**12.** The Eighth Circuit has likewise held that § 504 of the Rehabilitation Act provides a full spectrum of judicial remedies, including compensatory and punitive damages. *Gorman,* 257 F.3d at 745–49. *See, also, Rodgers v. Magnet Cove Public Schools,* 34 F.3d 642, 645 (8th Cir.1994). The ADA and the Rehabilitation Act are "comprehensive remedial schemes" that are not enforceable through a § 1983 action. *See Grey v. Wilburn,* 270 F.3d 607, 610–11 (8th Cir.2001).

ages not available in § 1983 claim for alleged violations of IDEA, but plaintiff's request for "any further relief that the court deems just and proper" could include compensatory education; district court thus erred in dismissing § 1983 claim as seeking only damages). The basis for such holdings is not that the IDEA's remedies are exclusive, but, rather, the fact that "[s]ection 1983 is remedial in nature, and does not in itself provide for any rights, substantive or otherwise." *Miener v. State of Missouri*, 673 F.2d 969, 976 n. 6 (8th Cir.1982) (*Miener I* ).

In *Heidemann*, a minor child and her mother brought a § 1983 action against a school district, members of the board of education, and various school employees, alleging violations of the child's constitutional rights to due process and equal protection, and federal statutory rights under the Rehabilitation Act and the IDEA, because she was physically restrained by means of "blanket wrapping" on a regular basis. After holding that the defendants were entitled to qualified immunity on the substantive due process, equal protection, and Rehabilitation Act claims because they did not violate any clearly established rights,[13] the Court of Appeals addressed the IDEA claim and a related procedural due process claim. It was noted that the plaintiffs alleged, "among other things, that defendants failed to adequately inform [the mother] of the true nature and degree of use of the blanket wrapping treatment for [her daughter], or to obtain [her] consent to the treatment as it was actually used, in violation of the statutory requirements for developing and implementing an individualized education program (IEP) for [the child], as required under 20 U.S.C. § 1401(a)(20)." *Id.*, 84 F.3d at 1032. The

Court "[did] not reach the merits of plaintiffs' assertions that defendants failed to comply with the procedures set forth in the IDEA and effectively denied [the child] a 'free appropriate education,' " but simply held "as a matter of law that plaintiffs in the present case cannot recover general or punitive damages arising out of defendants' alleged violations of the IDEA and, accordingly, defendants are entitled to qualified immunity for plaintiffs' IDEA claim and related procedural due process claim." *Id.*, at 1033.

In reaching this result, the Eighth Circuit relied upon *Crocker v. Tennessee Secondary School Athletic Ass'n*, 980 F.2d 382 (6th Cir.1992), a case that was decided with reference to the IDEA's predecessor, the Education of the Handicapped Act ("EHA"). The plaintiff in *Crocker* was a learning disabled student who sought to recover general damages for emotional anguish as a result of not being allowed to participate in two high school football games after he changed schools. The Sixth Circuit stated that it understood the Supreme Court in *Burlington* to interpret the EHA "as not allowing 'damages' in general but as allowing 'reimbursement [of] ... expenses that it [the municipal government] should have paid all along and would have borne in the first instance had it developed a proper IEP.' " *Crocker*, 980 F.2d at 386 (quoting *Burlington* ). It also cited *Miener v. State of Missouri*, 800 F.2d 749, 752–54 (8th Cir.1986) (*Miener II* ), and *Anderson v. Thompson*, 658 F.2d 1205, 1210–14 (7th Cir.1981), as suggesting the same approach. The Court then reasoned: "Because [the plaintiff] cannot recover damages under the EHA, he cannot recover damages under § 1983 for any

13. The Court of Appeals made no distinction between individual-capacity and official-capacity claims, and it included the school district as a defendant that was entitled to qualified immunity. It found that "defendants did not depart grossly from acceptable standards among qualified professionals." *Heidemann*, 84 F.3d at 1032.

violation of his rights secured by the EHA. Section 1983 merely secures the federally protected rights a plaintiff already holds. It does not expand those rights. Through § 1983 [the plaintiff] was able to bring an action that might otherwise have been foreclosed.[14] Section 1983 did not provide a right to damages where none existed before." *Crocker*, 980 F.2d at 387.

In *Hoekstra*, the parents of a disabled student sued the school district pursuant to § 1983 for allegedly depriving their child of the right to a free appropriate public education under the IDEA by failing to provide tutoring in a timely manner, and also pursuant to the ADA for denying her independent access to a lift elevator during a portion of the school year. The district court granted summary judgment in favor of the school district on both claims, finding insufficient evidence that the district had acted under any official policy or custom when it delayed in providing tutoring, or that it had acted in bad faith or exercised gross misjudgment when it delayed in providing the student with an elevator key.[15] On appeal, the Eighth Circuit found it unnecessary to reach the issues underlying the § 1983 claim since the plaintiffs had refused the only remedy available under the IDEA (*i.e.*, compensatory services in the form of additional tutoring) and *Heidemann* precluded any

damage award. The dismissal of the § 1983 claim was affirmed on this alternative basis. The Court of Appeals also affirmed the dismissal of the ADA claim, holding that "in the context of educational services for disabled children, a showing of gross misjudgment or bad faith on the part of school officials is necessary to succeed on an ADA claim." *Id.*, 103 F.3d at 627. This holding was largely based upon the Court's decision in *Monahan v. State of Nebraska*, 687 F.2d 1164, 1171 (8th Cir. 1982), which held that a bad faith or gross misjudgment standard applicable to the Education for All Handicapped Children Act of 1975 ("EAHCA," a predecessor to the EHA and the IDEA) also applies to § 504 of the Rehabilitation Act in the context of education. *See, also, Heidemann*, 84 F.3d at 1032 (applying *Monahan* holding to ADA claim).

In *Birmingham, supra*, it was alleged that a school district violated the IDEA, the ADA, and § 504 of the Rehabilitation Act by granting a disabled student an early graduation without prior written notice to her parent. The alleged IDEA violation was also structured as a § 1983 claim. The Court of Appeals affirmed the district court's dismissal of the ADA and § 504 claims because of plaintiff's failure to prove that the school district acted in bad

**14.** The district court issued a preliminary injunction against the school athletic association which allowed the plaintiff to play in all but the first two football games during his senior year. *See Crocker v. Tennessee Secondary School Athletic Ass'n*, 735 F.Supp. 753 (M.D.Tenn.), *aff'd*, 908 F.2d 972 (6th Cir. 1990).

**15.** The district court noted that the plaintiff's ADA claim, that the school district deliberately denied her a reasonable accommodation for her disability by failing to provide her with a key to the lift elevator, could have been brought under the IDEA, and, in fact, was an issue at the plaintiff's IDEA due process hearing. The district court held that the plaintiff

had failed to exhaust her administrative remedies under the IDEA by appealing from the hearing officer's adverse determination on the issue of the key, and that her ADA claim was barred because she had failed to "articulat[e] some distinction between the ADA claim and the IDEA claim regarding the elevator key.... Simply seeking a different type of relief, money damages, that is not available under the IDEA will not enable Plaintiff to proceed on her ADA claim without first exhausting IDEA remedies." *Hoekstra v. Independent School Dist. No. 283*, 916 F.Supp. 941, 948 (D.Minn.1996). The Eighth Circuit declined to reach this exhaustion issue. *See Hoekstra*, 103 F.3d at 626, n. 3.

faith or with gross misjudgment. It, however, reversed the district court's decision that the IDEA claim was time-barred, found on the stipulated facts that the Act had been violated, and remanded the matter to the district court to determine the nature and extent of compensatory education to which the student was entitled. The Court of Appeals also ruled that the district court had erred in dismissing the § 1983 claim for failure to state a claim upon which relief could be granted. While the district court had determined that the § 1983 claim sought only damages, which were not permitted by the IDEA, the Eighth Circuit noted that "[the] complaint seeks damages, reasonable attorney's fees and costs, and 'any further relief that the court deems just and proper.' ... Because the district court may order compensatory education if it deems such a remedy just and proper, the district court erred in dismissing her § 1983 claim." *Id.,* 220 F.3d at 856.[16]

Significantly, the Court of Appeals in *Heidemann, Hoekstra,* and *Birmingham* disposed of the ADA and § 504 claims on the merits. There is no indication in these opinions that the IDEA precluded the maintenance of such actions. In *Heidemann,* in fact, the Court quoted from *Miener II,* 800 F.2d at 754, in which it had suggested that a damage claim could be maintained under the Rehabilitation Act even though relief was available under the IDEA's predecessor statute: "Our conclusion that [the plaintiff] may recover compensatory educational services under the EHA does not obviate the necessity of determining whether she has also stated a claim for violations of the Rehabilitation Act ... or a claim under § 1983 for viola-

tions of the Due Process Clause; if [the plaintiff] succeeds on either of these claims she might obtain relief, such as general damages or attorney's fees, not available under the EHA. However, we conclude that the plaintiff has not succeeded on either point." *Id.,* 84 F.3d at 1033, n. 10. In *Thompson,* 144 F.3d at 580, and *Smith ex rel. Townsend v. Special School Dist. No. 1,* 184 F.3d 764, 769 (8th Cir.1999), the Eighth Circuit also held that ADA and § 504 claims that were based on same set of facts as an IDEA claim were properly dismissed for lack of proof that the defendants had acted in bad faith or with gross misjudgment; again, there was no mention of the IDEA providing the exclusive remedy in these cases.

█ The defendants nonetheless contend that the IDEA's remedies are exclusive, and in support of this contention cite three cases: *Smith v. Robinson,* 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984); *Fort Zumwalt School Dist. v. Missouri State Bd. of Education,* 865 F.Supp. 604 (E.D.Mo.1994), *aff'd sub nom., Fort Zumwalt School Dist. v. Clynes, supra;* and *Chuhran v. Walled Lake Consolidated Schools,* 839 F.Supp. 465 (E.D.Mich.1993), *aff'd,* 51 F.3d 271 (6th Cir.1995). Although the plaintiffs have cited no case law to the contrary, I find the defendants' contention to be without merit.

In *Fort Zumwalt,* the school district sought judicial review of an administrative decision under the IDEA which required the district to reimburse the parents of a learning disabled child for tuition and travel expenses associated with placing the child in a private school for two years. The parents counterclaimed for damages

---

16. Although a majority of the circuits have case law holding or at least implying that § 1983 suits may be based on IDEA violations, the Fourth and Tenth Circuits, at least, have held that the IDEA provides a comprehensive remedial framework that forecloses recourse to § 1983 as a remedy for IDEA violations. *See Padilla v. School Dist. No. 1,* 233 F.3d 1268, 1272–74 & n. 5 (10th Cir. 2000).

under the IDEA, the ADA, § 1983 (alleging an Equal Protection Clause violation), and § 504 of the Rehabilitation Act, for physical illness and emotional distress caused by the district's allegedly incompetent and unprofessional failure to provide their child with an adequate education. The district court did rule that the parents' exclusive remedy was under the IDEA, stating: "The counterclaim under 42 U.S.C. § 1983 that the child was discriminated against on the basis of his handicap in violation of the Equal Protection Clause of the Fourteenth Amendment is not cognizable; Congress intended IDEA to be the exclusive avenue through which such a claim can be pursued. *Smith. v. Robinson*, 468 U.S. 992, 1009–13, 104 S.Ct. 3457, 3467, 82 L.Ed.2d 746 (1984). Similarly, the parents cannot rely on § 504 of the Rehabilitation Act for damages unavailable under the IDEA. *Id.* at 1016–21, 104 S.Ct. at 3470–73; *Miener*, 800 F.2d at 754–55. The Court concludes that the same analysis applies to the counterclaim under ADA." *Id.*, 865 F.Supp. at 606–07 (footnotes omitted).[17]

In making this ruling, the district court in *Fort Zumwalt* apparently was unaware that the Supreme Court's holding in *Smith v. Robinson* was superseded by Congress when it passed the Handicapped Children's Protection Act of 1986. *See Hamilton v. Board of School Com'rs of Mobile County*, 993 F.Supp. 884, 888 (S.D.Ala. 1996) (rejecting district court's analysis in *Ft. Zumwalt*). This superseding amendment was discussed at some length by the Eighth Circuit in *Digre v. Roseville Schools Independent Dist. No. 623*, 841 F.2d 245 (8th Cir.1988), in which a parent sought to enjoin a school district from placing her child in a special education

program. In holding that the EHA did not preclude the bringing of a § 1983 action, the Court of Appeals stated:

On appeal from the district court's denial of her motion, Mrs. Digre argues that the court erred in concluding that a 42 U.S.C. § 1983 action is not available to remedy violations of the EHA or the due process clause of the fourteenth amendment. We agree. A section 1983 action lies when a defendant acting under color of state law violates a right secured by the Constitution or federal laws. *Watertown Equip. Co. v. Norwest Bank, Watertown, N.A.*, 830 F.2d 1487, 1489 (8th Cir.1987). It encompasses claims based on purely statutory violations of federal laws. *Maine v. Thiboutot*, 448 U.S. 1, 5–6, 100 S.Ct. 2502, 2504–05, 65 L.Ed.2d 555 (1980). An exception to this general rule exists when a comprehensive remedial scheme evidences a congressional intent to foreclose resort to section 1983 to remedy statutory violations. *Wright v. City of Roanoke Redevelopment & Housing Auth.*, 479 U.S. 418, 107 S.Ct. 766, 771, 93 L.Ed.2d 781 (1987); *Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 19, 101 S.Ct. 2615, 2625, 69 L.Ed.2d 435 (1981).

In *Smith v. Robinson*, 468 U.S. 992, 1012, 104 S.Ct. 3457, 3468, 82 L.Ed.2d 746 (1984), the Supreme Court analyzed the EHA's extensive remedial scheme and concluded that Congress intended to preclude reliance on section 1983 for violations of the EHA or an equal protection claim to a publicly financed special education. The court, however, distinguished a due process challenge and suggested that "unlike an independent

---

**17.** The district court also noted that the § 1983 claim was subject to dismissal for the additional reason that only negligence was alleged, and that the plaintiffs had "failed to

allege 'bad faith or gross negligence,' which is required to substantiate a § 504 claim in the context of education." *Id.*, at 606–07, n. 2 & 3 (citing *Monahan* ).

equal protection claim, maintenance of an independent due process challenge to state procedures would not be inconsistent with the EHA's comprehensive scheme." *Id.* at 1014–15 n. 17, 104 S.Ct. at 3469 n. 17. We have held that a due process challenge under section 1983 to procedures local and state agencies employ in an EHA context is permitted. *Miener v. State of Missouri,* 800 F.2d 749, 755 (8th Cir.1986) (challenging Missouri's administrative procedures); *Rose v. State of Nebraska,* 748 F.2d 1258, 1263 (8th Cir.1984) (challenging partiality of hearing officer), *cert. denied sub nom. Lutjeharms v. Rose,* 474 U.S. 817, 106 S.Ct. 61, 88 L.Ed.2d 50 (1985). *See also Robinson v. Pinderhughes,* 810 F.2d 1270, 1275 (4th Cir.1987) (finding that plaintiff entitled to rely on section 1983 when city school system failed to implement favorable decision by local hearing officer within time limit); *Manecke v. School Bd. of Pinellas County,* 762 F.2d 912, 918 (11th Cir.1985) (holding that where party denied due process because school board failed to provide timely, impartial hearing, relief available under section 1983); *cert. denied,* 474 U.S. 1062, 106 S.Ct. 809, 88 L.Ed.2d 784 (1986).

The district court quoted *Smith v. Robinson,* 468 U.S. at 1013, 104 S.Ct. at 3469, for the proposition that "where the EHA is available to a handicapped child asserting a right to a free appropriate education * * * the EHA is the exclusive avenue through which the child and his parents or guardian can pursue their claim." Mem. Op. at 5. The court concluded that Mrs. Digre's only claim could be for a violation of the EHA itself. The court erred in failing to recognize that the above-quoted language

referred only to an equal protection claim and did not preclude Mrs. Digre's due process challenge to the procedures the school district employed.

Moreover, in response to *Smith,* Congress "acted swiftly, decisively, and with uncharacteristic clarity to correct what it viewed as a judicial misinterpretation of its intent." *Fontenot v. Louisiana Bd. of Elementary & Secondary Educ.,* 805 F.2d 1222, 1223 (5th Cir.1986). Congress amended the Act in 1986 to state specifically that the EHA is not the exclusive avenue through which parents may enforce the rights of their handicapped children. *See* The Handicapped Children's Protection Act of 1986, Pub.L. No. 99–372 § 3, 100 Stat. 796 (1986) (to be codified at 20 U.S.C. § 1415). Subsection 1415(f) provides:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, title V of the Rehabilitation Act of 1973 [20 U.S.C.A. § 790, et seq.], or other Federal statutes protecting the rights of handicapped children and youth, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (b)(2) and (c) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C.A. § 1415(f) (West Supp. 1987).[18]

This amendment supersedes the holding in *Smith* that a section 1983 action is not available to enforce the Act's substantive rights. *Mrs. W. v. Tirozzi,* 832 F.2d 748, 754 (2d Cir.1987). "[Section]

---

**18.** This operative language, as amended by Pub.L. 105–17, Title I, § 101, 111 Stat. 88 (1997), *inter alia,* to include a reference to the ADA, is now codified as subsection 1415(*l*), the full text of which has been recited previously.

1415(f) was designed to 'reestablish statutory rights repealed by the U.S. Supreme Court in *Smith v. Robinson*' and to 'reaffirm, in light of this decision, the viability of section 504, 42 U.S.C.1983, and other statutes as separate vehicles for ensuring the rights of handicapped children.'" *Mrs. W. v. Tirozzi*, 832 F.2d at 754–55, citing H.R.Rep. No. 296, 99th Cong., 1st Sess. 4 (1985). Thus, Mrs. Digre was entitled to bring a section 1983 action based on alleged violations of the EHA or the due process and equal protection clauses of the fourteenth amendment.

*Id.*, at 249–50.

On the appeal of *Fort Zumwalt*, the Eighth Circuit did not specifically discuss the parents' ability to bring additional claims under the ADA, the Rehabilitation Act, or § 1983. It simply held, after reversing the district court's determination that the parents were entitled to reimbursement of private schooling costs,[19] that "[t]he damage claim cannot succeed because the district offered [the child] a free appropriate public education, and damages are not available for IDEA violations. *Heidemann v. Rother*, 84 F.3d 1021, 1033 (8th Cir.1996). We affirm the rulings of the district court on these issues." *Id.*, 119 F.3d at 615. Given the Court's substantive determination that the school district had provided the child with an appropriate education, its summary affirmance of the district court's rulings on the damage claim issues is not precedent for holding as a matter of law that the IDEA limits the relief that is a available to a special education student under the ADA.

The same result obtained in *Independent School Dist. No. 283 v. S.D. by J.D.*, 948 F.Supp. 860 (D.Minn.1995), *aff'd*, 88 F.3d 556 (8th Cir.1996), in which the school district successfully challenged an administrative determination that required it to reimburse tuition expenses of a special education student. A hearing officer initially ruled in the school district's favor, finding that the student was provided with a free appropriate education, but his ruling was reversed on appeal to the state commissioner of education. The school district then brought suit in federal district court, pursuant to 20 U.S.C. § 1415(e)(2) (now codified as § 1415(i)(2)), and the student counterclaimed for actual and punitive damages under § 1983 (Fourteenth Amendment), § 504 of the Rehabilitation Act, and the ADA. The district court, adopting a magistrate judge's report and recommendation, granted judgment on the administrative record and reinstated the hearing officer's initial determination; the student's counterclaims were also dismissed. With respect to such dismissal, the magistrate judge stated:

We have no doubt that viable claims can be asserted against a School District under Section 1983, the Rehabilitation Act and the ADA. *Digre v. Roseville Schools Ind. D. 623*, 841 F.2d 245, 249–50 (8th Cir.1988); *Lue v. Moore*, 43 F.3d 1203, 1205 (8th Cir.1994), citing *Rodgers v. Magnet Cove Public Schools*, 34 F.3d 642, 645 (8th Cir.1994). While that has not always been the case, Congress has left no doubt as to its intention to allow such claims to proceed in tandem with an IDEA claim. *See Smith v. Robinson*, 468 U.S. 992, 1012, 104 S.Ct. 3457, 3468, 82 L.Ed.2d 746 (1984) (Section 1983 and equal protection claims preempted by IDEA), overruled by *The Handicapped Children's Protection Act of 1986*, Pub.L. No. 99–372 § 3, 110 Stat. 796 (1986)....

Our Court of Appeals has held that [former section 1415(f)] was designed to

---

**19.** The reversal pertained to a subsequent district court decision, *Fort Zumwalt School*

*Dist. v. Missouri State Bd. of Education,* 923 F.Supp. 1216 (E.D.Mo.1996).

reestablish the statutory rights that "were repealed by the U.S. Supreme Court in *Smith v. Robinson.*" *Digre v. Roseville Schools Ind. D. 623, supra* at 250, quoting *Mrs. W. v. Tirozzi,* 832 F.2d 748, 754 (2d Cir.1987).

Notwithstanding that S.D. is entitled to commence a Section 1983 action and actions under the Federal disability Statutes, the predicate acts upon which she has premised those actions have been determined to be permissible acts under the IDEA. As a consequence, no viable claim can exist under these other statutory provisions, in the absence of a claim which, factually and legally, is distinct from those that have already been resolved. *Cf., Lenn v. Portland School Committee,* [998 F.2d 1083 (1st Cir. 1993)] at 1085 n. 1 (Court assumes, *arguendo,* accuracy of parties' conclusion that sweep of IDEA and Rehabilitation Act are identical); *Monahan v. State of Neb.,* 687 F.2d 1164, 1170 (8th Cir.1982) (Dismissing Rehabilitation Act and Section 1983 claims where same theories were advanced under IDEA). Notably, S.D. makes no such contention. We, therefore, find that S.D.'s independent causes of action add nothing substantively to her core IDEA claim, and we recommend that her Counterclaims against the School District be dismissed.

*Id.,* 948 F.Supp. at 889–90 (footnote omitted).[20] The district judge found that dismissal of the counterclaim was appropriate applying "principles of collateral estoppel." *Id.,* 948 F.Supp. at 867. On appeal, the Eighth Circuit "agreed with the district that these claims are precluded by the IDEA judgment in the School District's favor." *Id.,* 88 F.3d at 562. It stated:

IDEA does not "restrict or limit the rights, procedures, and remedies available" under other federal law, but it does require a claimant to exhaust administrative remedies. 20 U.S.C. § 1415(f). When that process produces an administrative decision that is upheld on judicial review under IDEA, principles of issue and claim preclusion may properly be applied to short-circuit redundant claims under other laws. *See University of Tenn. v. Elliott,* 478 U.S. 788, 796–99, 106 S.Ct. 3220, 3224–27, 92 L.Ed.2d 635 (1986); *Plough v. West Des Moines Community Sch. Dist.,* 70 F.3d 512, 515–16 (8th Cir.1995).

*Id.* Nothing in the Court's opinion suggests that the student's claim for damages was otherwise precluded by the IDEA.[21]

In the final case cited by the defendants, *Chuhran,* the United States District Court for the Eastern District of Michigan labeled the plaintiff's Rehabilitation Act, ADA, and § 1983 claims as "redundant" of his IDEA claim and held, based on *Smith v. Robinson,* that the IDEA provided the exclusive remedy. Although the Sixth Circuit on appeal affirmed the district court's grant of summary judgment to the defendants on all claims, it stated in an unpublished opinion that "the district court erred in relying on *Smith v. Robinson* ... for the proposition that where the IDEA provides a remedy, it is exclusive ..." because "Congress expressly overruled *Smith* in enacting 20 U.S.C. § 1415(f) [now codified at § 1415(*l*)]...." *Chuhran v. Walled Lake Consolidated Schools,* 51 F.3d 271 (Table), 1995 WL 138882 at *2 &

---

20. The magistrate judge found it unnecessary to address whether the student had exhausted her administrative remedies with respect to her § 1983, Rehabilitation Act and ADA claims. *See id.,* at 889 n. 40.

21. *Accord, Moubry v. Independent School Dist. 696,* 9 F.Supp.2d 1086, 1109–11 (D.Minn. 1998) (ADA and Rehabilitation Act claims, which required showing of bad faith or gross misjudgment on the part of school officials, were precluded by finding that school officials acted in compliance with the IDEA).

n. 3 (6th Cir.1995). The Court of Appeals' affirmance was instead based upon the plaintiff's failure to establish the essential elements of a Rehabilitation Act claim or an ADA claim, and the fact that the plaintiff's § 1983 claim was predicated solely upon (and was merely derivative of) the dismissed IDEA, Rehabilitation Act, and ADA claims.

In summary, I reject the defendants' argument that the complaint fails to state a possible claim for damages under the ADA. I find no viable authority to support their position that the IDEA's remedies were intended by Congress to be exclusive. To the contrary, Congress has expressly declared that nothing in the Act "shall be construed to restrict or limit the ... remedies available under ... the Americans with Disabilities Act of 1990 . . . ." 20 U.S.C. § 1415(*l*). Even if damages are not awardable, the plaintiffs may be entitled to obtain "other and further relief as the Court deems just and equitable," as requested in their complaint. *See Birmingham, supra* (finding error in categorizing dismissed § 1983 claim as seeking only damages). Dismissal on this basis therefore is not appropriate. I will next consider whether the plaintiffs were required to exhaust their IDEA administrative remedies before bringing this action.

## B. Exhaustion of Administrative Remedies

■ Section 1415(*l*) requires that "before the filing of a civil action under [the ADA] seeking relief that is also available under [the IDEA], the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under [the IDEA]." While the Eighth Circuit has not specifically addressed the issue of whether a claim for damages is subject to this exhaustion requirement, other courts of appeals have, with differing results.[22]

The First, Second, Seventh, and Eleventh Circuits have held that exhaustion is required even though damages are not available under the IDEA. *See Charlie F. v. Board of Education*, 98 F.3d 989, 992 (7th Cir.1996) ("We read 'relief available' to mean relief for the events, condition, or consequences of which the person complains, not necessarily relief of the kind the person prefers."); *Babicz v. School Board of Broward County*, 135 F.3d 1420, 1422 (11th Cir.) (claims regarding the denial of publicly financed special education under § 504 of the Rehabilitation Act and the ADA are subject to the IDEA's exhaustion requirement), *cert. denied*, 525 U.S. 816, 119 S.Ct. 53, 142 L.Ed.2d 41 (1998); *Frazier v. Fairhaven School Committee*, 276 F.3d 52, 59–63 (1st Cir.2002) (plaintiffs who bring an IDEA-based claim under § 1983, in which they seek only money damages, must exhaust the administrative process available under the IDEA as a condition precedent to entering a state or federal court); *Polera*, 288 F.3d at 487–88 (the fact that the plaintiff seeks damages, in addition to relief that is available under the IDEA, does not enable her to sidestep the exhaustion requirements of the IDEA).

The Third, Sixth, Ninth, and Tenth Circuits have held that exhaustion may not be

---

**22.** There also appears to be some difference of opinion between district courts within the Eighth Circuit. *Compare Doe ex rel. Doe v. Barger*, 193 F.Supp.2d 1112, 1116 (E.D.Ark. 2002) (court would generally find that exhaustion not required where plaintiff seeks not only remedial relief available under the IDEA, but also damages for the alleged bodily harm and emotional harm he suffered; however,

damages were not available because state school entitled to Eleventh Amendment immunity and ADA claim could not be pursued against individual defendants), *with Hoekstra*, 916 F.Supp. at 948 (simply seeking a different type of relief, money damages, that is not available under the IDEA will not enable plaintiff to proceed on ADA claim without first exhausting IDEA remedies).

required when a plaintiff seeks only damages. *See W.B. v. Matula,* 67 F.3d 484, 495–96 (3rd Cir.1995) (plain language of statute does not require exhaustion where relief sought is unavailable in an administrative proceeding; additionally, exhaustion would be futile where relief is not available under the IDEA, and matter was ripe for judicial resolution without further development of factual record); *Witte v. Clark County School Dist.,* 197 F.3d 1271, 1275 (9th Cir.1999) (plaintiff seeking damages under § 1983 and the ADA, whose educational issues were resolved through the IEP process, was not "seeking relief that is also available under" the IDEA); *Covington v. Knox County School System,* 205 F.3d 912, 915–18 (6th Cir.2000) (a claim for money damages does not automatically create an exception to the exhaustion requirement of the IDEA, but exhaustion excused as futile where money damages are the only remedy capable of redressing plaintiff's injuries); *Padilla,* 233 F.3d at 1274–75 (under narrow circumstances of case, exhaustion not required because plaintiff seeking damages for fractured skull and other physical injuries was not seeking "relief that is also available" under the IDEA).

I agree with the Tenth Circuit that the "primary concern in determining whether a plaintiff must utilize the IDEA's administrative procedures relates to the source and nature of the alleged injuries for which he or she seeks a remedy, not the specific remedy itself. In essence, the dispositive question generally is whether the plaintiff has alleged injuries that could be redressed to any degree by the IDEA's administrative procedures and remedies. If so, exhaustion is required. If not, the claim necessarily falls outside the IDEA's scope, and exhaustion is unnecessary. Where the IDEA's ability to remedy a particular injury is unclear, exhaustion should be required in order to give edu-

cational agencies an initial opportunity to ascertain and alleviate the alleged problem." *Padilla,* 233 F.3d at 1274. As noted by the Eighth Circuit in *Blackmon v. Springfield R–XII School Dist.,* 198 F.3d 648, 656 (8th Cir.1999) (quoting *Urban v. Jefferson County Sch. Dist. R–1,* 89 F.3d 720, 724 (10th Cir.1996)), the IDEA's exhaustion requirement permits agencies "to exercise discretion and apply their expertise, . . . allow[s] complete development of the record before judicial review, . . . prevent[s] parties from circumventing the procedures established by Congress, and . . . avoid[s] unnecessary judicial decisions by giving the agency an opportunity to correct errors." Also, "[c]ourts recognize only three exceptions to the exhaustion requirement, including futility, inability of the administrative remedies to provide adequate relief, and the establishment of an agency policy or practice of general applicability that is contrary to law." *Id.* (citing *Urban*).

The principal injury alleged in the present case is Justin's expulsion from school, with its attendant consequences that "he will be unable to graduate with his class or participate in any senior extracurricular activities." (Complaint, ¶ 22.) Full or partial redress for this injury presumably was available through the IDEA procedures. The resultant "trauma and emotional distress" that Justin allegedly has suffered may also have been prevented or mitigated by his obtaining relief (*e.g.,* reinstatement) under the IDEA. Absent a showing that one of the exceptions to the exhaustion requirement exists in this case, I conclude that the plaintiffs cannot maintain their action under the ADA.

A plaintiff's failure to exhaust administrative remedies under the IDEA has been held to deprive a court of subject matter jurisdiction. *See, e.g., Urban,* 89 F.3d at 725; *Witte,* 197 F.3d at 1274; *Polera,* 288 F.3d at 483. Other courts, however, have

held that exhaustion of the IDEA's administrative remedies is merely a condition precedent to filing suit. *See, e.g., Charlie F.*, 98 F.3d at 991; *N.B. by D.G. v. Alachua County School Bd.*, 84 F.3d 1376, 1379 (11th Cir.1996), *cert. denied*, 519 U.S. 1092, 117 S.Ct. 769, 136 L.Ed.2d 715 (1997).[23]

Regardless of whether exhaustion of IDEA remedies should be treated as a jurisdictional matter to be pleaded by the plaintiffs under Fed.R.Civ.P. 8(a), or as a matter of affirmative defense to be pleaded by the defendants under Fed.R.Civ.P. 8(c), the plaintiffs' concession that their administrative remedies have not been exhausted is sufficient to permit the granting of the defendants' motion to dismiss the complaint for failure to state a claim.[24] The plaintiffs, however, will be allowed an opportunity to amend their complaint to allege the applicability of one or more recognized exceptions to the exhaustion requirement.[25]

## C. Bad Faith or Gross Misjudgment

■ The defendants additionally contend that the complaint is deficient be-cause the plaintiffs have failed to allege bad faith or gross misjudgment. I agree that the plaintiffs are required to prove such misconduct as an essential element of their ADA claim. The bad faith/gross misjudgment standard harmonizes the IDEA and the ADA by balancing the rights of disabled children, the responsibilities of state educational officials, and the competence of courts to make judgments in technical fields. See *Hoekstra*, 103 F.3d at 627. *See, also, Birmingham*, 220 F.3d at 856 (where alleged ADA violations are based on educational services for disabled children, the plaintiff must prove that school officials acted in bad faith or with gross misjudgment); *Townsend*, 184 F.3d at 769 (the ADA does not create general tort liability for educational malpractice); *Thompson*, 144 F.3d at 580 (in the context of a school case, in order to make out a prima facie case under the ADA the plaintiff must show bad faith or an exercise of gross misjudgment).

I do not agree that the plaintiffs are required to include a specific allegation of bad faith or gross misjudgment in order to state a claim. "Complaints need not spell

---

**23.** *But cf. Babicz*, 135 F.3d at 1422 (affirming dismissal of complaint for lack of subject matter jurisdiction).

**24.** The defendants have not moved to dismiss the complaint for lack of subject matter jurisdiction. Although they have submitted evidentiary materials (filing 17) in support of their Rule 12(b)(6) motion, I have not considered such materials and therefore shall not treat the motion as one for summary judgment. *See State ex rel. Nixon v. Coeur D'Alene Tribe*, 164 F.3d 1102, 1107 (8th Cir.) ("In this circuit, Rule 12(b)(6) motions are not automatically converted into motions for summary judgment simply because one party submits additional matters in support of or opposition to the motion."), *cert. denied*, 527 U.S. 1039, 119 S.Ct. 2400, 144 L.Ed.2d 799 (1999).

**25.** The plaintiffs' brief concludes with a request that they be granted leave to amend in the event that the defendants' motion to dis-miss is granted. In light of their apparent willingness to amend, and because there is some uncertainty as to whether exhaustion of IDEA remedies is a jurisdictional prerequisite, the court will invite the plaintiffs to file an amended complaint even though it is not known whether they intend to rely upon an exception to the exhaustion requirement. *See Wisdom v. First Midwest Bank*, 167 F.3d 402, 409 (8th Cir.1999) (failure to file a formal motion to amend complaint is not necessarily fatal as long as plaintiffs show a willingness to amend; parties should usually be given at least one chance to amend their complaint, but should be required to show how the complaint could be amended to save the meritless claim). The plaintiffs, of course, may also plead that they have exhausted their administrative remedies if there has been a change in status since their brief was submitted to the court.

out every element of a legal theory; that's the big difference between notice and code pleading." *Hemenway v. Peabody Coal Co.,* 159 F.3d 255, 261 (7th Cir.1998). *See, also,* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure,* § 1216, at 154–56 (2d ed.1990) ("[T]he complaint ... need not state with precision all elements that give rise to a legal basis for recovery as long as fair notice of the nature of the action is provided."). The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved. *Hopkins v. Saunders,* 199 F.3d 968, 973 (8th Cir.1999), *cert. denied,* 531 U.S. 873, 121 S.Ct. 176, 148 L.Ed.2d 121 (2000). It is the facts well pleaded, not the theory of recovery or legal conclusions, that state a cause of action and put a party on notice. *Id.* The plaintiffs have alleged that Justin was discriminated against because of his disability, and have provided specific examples in their complaint of allegedly similarly-situated, non-disabled students who were not expelled. Such allegations are sufficient to satisfy the pleading requirements of Fed. R.Civ.P. 8(a).

I also disagree with the defendants' contention that the plaintiffs cannot establish bad faith or gross misjudgment as a matter of law. Justin's expulsion no doubt was authorized by Neb.Rev.Stat. § 79–267, assuming that he was guilty of the alleged misconduct, and further assuming that such conduct was not a manifestation of his disability, but expulsion was not required by the statute (which merely sets forth possible grounds for long-term suspension, expulsion, or mandatory reassignment). Similarly, while Neb.Rev.Stat. § 79–263 mandates that each school district shall adopt a policy requiring the expulsion for at least one year of any student who knowingly and intentionally brings a gun to school, the policy must also "authorize the superintendent or the school board or board of education to modify the expulsion requirement on an individual basis." The essence of the plaintiffs' complaint is a "bad faith" or "gross misjudgment" claim, in that it is alleged that the defendants have seen fit to modify the expulsion requirement whenever non-disabled students have been involved, but that they were unwilling to do so in Justin's case simply because he is a special education student.

### III. Conclusion

The plaintiffs are not precluded from suing the defendant school district under the ADA to recover damages or other relief for the discriminatory treatment that their son allegedly received. In order to maintain such a suit, however, the plaintiffs must demonstrate (and they will be required to plead) either that they have exhausted their administrative remedies under the IDEA or else that exhaustion would be futile or should be excused on some other recognized basis. In order to prevail in the action, the plaintiffs must also prove that the expulsion decision was made in bad faith or was a gross misjudgment; their complaint adequately states a claim for relief applying this standard.

Accordingly,

IT IS ORDERED that:

1.  Defendants' motion to dismiss (filing 16) is granted in part and denied in part, as follows:

    a.  the motion is granted with respect to Defendants' contention (filing 16, paragraph 2) that Plaintiffs have failed to exhaust their administrative remedies under the Individuals with Disabilities Education Act; and

    b.  in all other respects, the motion is denied.

2.  Plaintiffs are granted leave to file an amended complaint, in accordance

with this memorandum, within fifteen (15) days of today's date. If such an amended complaint is not filed within the prescribed time, the action shall be subject to dismissal (without prejudice) without further notice.